In re MCORP, MCorp Financial, Inc., and MCorp Management, Debtors.

MCORP, MCorp Financial, Inc., and MCorp Management, Debtors in Possession, Plaintiffs,

and

Official Creditors' Committee, Intervenor,

v.

The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM OF the UNITED STATES of America, Defendant.

Civ. A. No. 89–1677.
Bankruptcy No. 89–02312–H3–11.
Adv. No. 89–0298.

United States District Court, S.D. Texas, Houston Division.

June 19, 1989.

---

D.J. Baker, Melanie Gray, Weil, Gotshal & Manges, Houston, Tex., Alan B. Miller, Lori R. Fife, Weil, Gotshal & Manges, New York City, Thomas W. Luce, III, Hughes & Luce, Dallas, Tex., John D. Hawke, Jr., Arnold & Porter, Washington, D.C., for MCorp, MCorp Financial, Inc., and MCorp Management.

Sandra E. Mayerson, Mark I. Bane, Kelley Drye & Warren, New York City, for Manufacturers Hanover Trust Co., as Indenture Trustee, and Banco Atlantico, S.A.

Jarrell D. McDaniel, Kaaran E. Thomas, Vinson & Elkins, Houston, Tex., Ogden N. Lewis, John Fouhey, Davis Polk & Wardwell, New York City, for Morgan Guar. Trust Co. of New York.

William W. Wiles, Richard Ashton, Federal Reserve Bd., Washington, D.C., J. Christopher Kohn, Tracy J. Whitaker, Charles D. Stodghill, U.S. Dept. of Justice, Civ. Div., Washington, D.C., Henry Oncken, Kimberly Pignuolo, U.S. Atty., Houston, Tex., for Board of Governors of Federal Reserve System of USA.

Ben T. Head, Nancy L. Holley, U.S. Trustee, Houston, Tex., for U.S. Trustee.

## OPINION ON THE PRELIMINARY INJUNCTION AGAINST THE FEDERAL RESERVE SYSTEM

HUGHES, District Judge.

### 1. *Introduction.*

As debtor in possession, a bank holding company and two of its nonbank subsidiaries (MCorp, MCorp Financial, Inc., and MCorp Management [Debtor]) applied for a preliminary injunction against the Board of Governors of the Federal Reserve System (Board). The Debtor seeks to enjoin the Board from prosecuting administrative proceedings against the holding company and its nonbank subsidiaries as part of the Board's regulation of the safety and integrity of the bank subsidiaries. The issue is whether a nonbank corporation that owns banks and nonbanks as subsidiaries is entitled to have its bankruptcy case principally directed by the banking agencies or by the bankruptcy process. An injunction will be issued to allow possible reorganization of the Debtor through the bankruptcy court.

### 2. *Statutes.*

The Debtor asserts:

A. This court sitting in bankruptcy has exclusive jurisdiction over all the property in the debtor's estate. 28 U.S.C. § 1334(d);

B. The Board's actions are in reality an attempt to control the assets of the estate in violation of the automatic stay. 11 U.S.C. § 362(a).

C. If the Board is exempt from the automatic stay, the bankruptcy code authorizes an injunction to protect the debtor from third-party interference. 11 U.S.C. § 105.

The Board counters:

A. The Financial Institutions Supervisory Act (FISA) withdraws jurisdiction from the courts, superseding the automatic stay imposed by the bankruptcy code. 12 U.S.C. § 1818(i).

B. The Board's proceedings are regulatory actions exempted from the automatic stay. 12 U.S.C. § 1818(b); 11 U.S.C. § 362(b).

C. The character of the regulation and the general scheme of banking supervision are not the third-party acts that should be subject to an injunction against interference with a bankruptcy case.

3. *Background of the Controversy.*

At the beginning of 1989, MCorp was a bank holding company, owning twenty-five bank subsidiaries and several nonbank subsidiaries. In common with many financial institutions, MCorp has suffered large, continuing losses from its real estate loans, having already written down its bad oil-related loans. In March, the comptroller of the currency declared twenty of MCorp's banks insolvent and closed them. The banks continued to operate as nationalized receiverships through the Federal Deposit Insurance Corporation under the name Deposit Insurance Bridge Bank.

This civil action was an adversary proceeding in the consolidated bankruptcy case to reorganize MCorp, and the reference by the district court to the bankruptcy court was withdrawn. (Adversary Number 89–0298.) The other actions are:

A. An involuntary petition was filed in the Southern District of New York against MCorp and it was transferred here to pend under Case Number 89–02848–H2–11.

B. A voluntary petition was filed in the Southern District of Texas by MCorp Management under Case Number 89–02324–H5–11.

C. A voluntary petition was filed in the Southern District of Texas by MCorp Financial, Inc., under Case Number 89–02312–H3–11.

The filing in New York of the involuntary case precipitated the bank closings by the comptroller and the voluntary cases by the subsidiaries. The Official Creditors' Committee of the debtors was allowed to intervene to assert essentially the same grounds as MCorp in support of an injunction.

MCorp is left with five bank subsidiaries and all of its nonbank subsidiaries, two of which are also debtors in bankruptcy.

MCorp maintains that twelve of its banks were closed illegally or improvidently. The closed institutions are not under the control of MCorp because they are under FDIC receiverships.

The Federal Reserve Board has initiated administrative actions against MCorp as a bank holding company for violating its regulations that ensure the integrity of the banking system through the requirement that the holding company be a "source of financial strength" to the subsidiary banks. The administrative actions will conflict with MCorp's ability to address a global reorganization in the bankruptcy case.

4. *Standard for Injunctive Relief.*

This proceeding is in the nature of a preliminary declaratory judgment rather than a normal preliminary injunction which maintains some status between principal litigants until the merits of their claims have been heard. This injunction will prospectively assign one authority or another to supervise a restructuring.

Despite the peculiar nature, this injunction meets the regular requirements. *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974).

A. MCorp is likely to prevail on the merits of its legal priority claim. The automatic stay is applied rigorously, and only in exceptional cases is there a departure from protecting the debtor. Where the regulation is inextricably mixed with the restructuring process rather than some ancillary public health or safety question, MCorp ought to succeed with its claim of insulation from the Board by the automatic stay. Even if the regulatory exemption applies, the highly probable result is MCorp's success because of the availability of the anti-interference protection.

B. Enjoining the Board is necessary to prevent imminent and irreparable harm to the Debtor; responding to the Board's proceedings deprives MCorp of resources desperately

needed to prepare for its reorganization. If MCorp is to survive, to the benefit of the creditors and the government, it must act quickly, for a lingering Chapter 11 case inevitably becomes a liquidation. Obliging MCorp to respond in multiple forums to multiple agencies, each with its own internal and external priorities, would dissolve the focus MCorp needs to see the route to survival.

C. The risk to MCorp in both probability and magnitude exceeds the possible danger to the Board's interests. The safeguards of the bankruptcy code ensure the protection of the generalized interest of the Board in healthy holding companies. The Board's exposure to liability independent of its regulatory concern is minimal, and it is not jeopardized by this injunction. Its interest can adequately be represented in the bankruptcy proceedings.

D. The issuance of this injunction does not harm the public interest defined either as the general public interest or as the discernible interests of unrepresented third-parties. To the contrary, the public is served by having all proceedings in one forum, especially a forum where the individuals in the affected public can participate.

5. *Issue.*

When a bank holding company seeks reorganization under the bankruptcy code, does the general bankruptcy process supersede the processes of the agencies that regulate banking?

6. *Regulatory Framework.*

A. *Comptroller of the Currency.*

General supervision of national banks, including their creation and closing, is confided to the comptroller of the currency. If, on his examination, the comptroller determines that a bank is insolvent, he places it in receivership. That receiver is the FDIC. 12 U.S.C. § 191.

B. *Federal Deposit Insurance Corporation.*

The FDIC has two roles in banking regulation. First, it acts as a limited insurer of deposits to attract depositors to the banking system and to prevent runs, with their destructive effects. Second, the FDIC acts as a receiver for the estate of a bank that has been closed by the comptroller. 12 U.S.C. § 1811.

C. *Federal Reserve Board.*

The Federal Reserve System is the central bank for the United States, and among its powers are responsibilities for the regulation of banks and bank holding companies. The Board's regulation takes many forms, like its clearinghouse function, furnishing liquidity, margin and capital requirements, open market purchases and sales, and currency issuance.

Under the FISA, if the Board finds that a bank holding company has engaged in an unsafe or unsound practice, the Board has the authority to notify the company of its charges, stating the violations and setting a hearing before the Board. 12 U.S.C. § 1818(b). If the charges are proved, the Board can order the company to stop the derelict practices and to take affirmative steps to prevent future violations.

Temporary orders to desist may also be issued by the Board before proceedings are completed. These orders may be issued without a hearing and are effective immediately.

Because the purpose of vesting the Board with these powers is to assure the soundness of banks that are owned by holding companies, transactions between the parent company and its nonbank subsidiaries may be regulated to prevent losses to the bank subsidiaries.

7. *Classes of Regulation by the Board.*

The Board has claimed four classes of authority over the Debtor and its components. First, the Board is empowered to regulate the banking process, through its clearinghouse function, for example.

Second, the most obvious class of power that the Board has over banks is through its central bank functions. These directly affect the parties here, through reserve and margin requirements for instance, but they are fashioned at a higher level than individual bank operation. These are not involved; the bank subsidiaries of MCorp will continue to abide by the Board's general regulation of banking transactions.

Third, the Board is charged generally with supervision of bank and bank holding company practices that may endanger the integrity of the banks and the system of banks. These vaguely defined powers cover items from the requirement of minimum capital to the prohibition of self-dealing.

Fourth, the Board asserts the authority to direct the activities, of the holding company's nonbank subsidiaries in their transactions unrelated to banks or banking including forcing a sale for capital infusion.

### 8. *Priority of Regulation.*

Banks cannot file for bankruptcy; they must reorganize or liquidate under the banking laws. Bank holding companies, however, are not prohibited from recourse to bankruptcy, and while they are regulated by banking agencies, they cannot be reorganized or liquidated under the laws for banks. Congress has amended both the banking and the bankruptcy laws several times, never resolving this potential conflict.

The new bankruptcy code was adopted in 1978, long after bank holding companies had been regulated. The holding company act has been frequently amended itself. The dual nature of bank holding companies implicates the interests of the systems both of regulation and of reorganization. The statutes as enacted limit the bank regulators to primacy in dealing with banks.

When a bank holding company is a debtor in possession, the conflict between the court's restructuring of the corporation and the Board's regulating can be resolved by allowing the Board to participate in the court proceeding. Preclusion by the bankruptcy forum would not cover the Board's clearinghouse or monetary functions, but it would restrict the Board's supervision of MCorp's asset allocation, intra-group transactions, and third-party contracts. This would give the Debtor the reprieve needed to retrieve its vitality.

Allowing the Board's proceedings to continue in a separate forum poses several problems. Parallel proceedings are both confusing and inefficient. The potential for a successful reorganization would be jeopardized. The bankruptcy code is designed to be a comprehensive plan to rehabilitate the debtor to the exclusion of actions impairing reorganization.

Without minimizing the importance of the Board's administrative power over bank holding companies, the need for the court's power over the entirety of the debtor's estate takes precedence. This preemption is supported by policy and law.

Financial Institutions Supervisory Act, 12 U.S.C. § 1818(i), says:

> [N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

Similar jurisdictional limitations have been overridden through control of the debtor's estate having been entrusted to the authority of the bankruptcy court. This construction has been employed in cases affecting the Court of Claims and the Tax Court (both administrative rather than judicial); their jurisdictional grants are parallel to the Board's and distinct from the judicial power through the bankruptcy code. *See In re Casey Corp.,* 46 B.R. 473 (Bankr.S.D.Ind.1985); *Bostwick v. United States,* 521 F.2d 741 (8th Cir.1975).

The *in rem* proceedings in admiralty, which are particular liquidation actions, yield to the bankruptcy code's plan for general liquidation. This is true even though maritime jurisdiction is directly a judicial power of international significance.

*In re Louisiana Ship Management, Inc.,* 761 F.2d 1025 (5th Cir.1985). The grant of jurisdiction over the debtor's estate for the restricted purpose of facilitating the reorganization of the debtor supersedes other jurisdictional limits. 28 U.S.C. § 1334(d).

### 9. *Regulatory Exception to the Stay.*

Even if the principal power over the debtor's estate is in the bankruptcy court, agencies whose mandate includes matters of "police or regulatory power" are not barred by the filing of a petition from pursuing the debtor. 11 U.S.C. § 362(b)(4). Although very few imaginable acts of a governmental unit could not plausibly be claimed to be within that category, congress did not act to exempt all governmental actions from the automatic stay, for the phrase "police and regulatory power" is a peculiar way to say "all."

A. There are two tests usually articulated in deciding whether the stay applies to a governmental action. Although neither of these dichotomies is particularly applicable with precision, they both do recognize that there are automatically stayed governmental activities.

(1) The first divides governmental actions into two categories: pecuniary interest of the state in the debtor's estate or public policy affecting safety and health.

(2) The second divides governmental actions into two slightly different categories: those that adjudicate private rights and those that effectuate public policy. *See N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir.1986).

B. A solution to the definitional problem can be reached on procedural grounds. The principal difference between the automatic stay and the anti-interference injunction is the burden on the participants. For ordinary acts against the debtor's property, the stay has minimal risk to those who are blocked or the public. Because the automatic stay of private acts against the debtor's estate covers the majority of the debtor's relations, it has enough relief to allow reorganization. For governmental acts (as well as third-parties) to be blocked, however, the debtor must identify and move against them specifically through an injunction. The effect of this reading would produce a clear and reasonable approach, but it would still be an alteration of the plain text of the statute.

C. One solution to the lack of precision in the clause that allows some escape by governments from the stay is to attempt to classify governmental actions between those that are of immediate, actual concern to the health of the general public and those that are assists to private parties, asset allocations, and property acquisitions for its own account, as they are at cross purposes with the federal reorganization powers.

The Board's interest in protecting the public from "unsafe" banking practices may be important, but it does not rise to the level of injury or immediacy of aircraft certification, adulterated foods, or transportation of diseased livestock. 12 CFR 225, Reg.Y. In a case involving the Environmental Protection Agency, a court of appeals has said that the scope of the exemption from the stay is not limited to matters of imminent physical peril; however, the case dealt with a landfill without several safeguards, including a prevention of polluted runoff, so the comment was an observation, not a holding. *Matter Commonwealth Oil Refining Co., Inc.,* 805 F.2d 1175 (5th Cir.1986) *cert. denied sub nom, Commonwealth Oil and Refining Co. v. E.P.A.,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987). Notably, the legislative history of the code reveals that bankruptcy courts had been enforcing the automatic stay against state pollution abatement efforts. *See* HR Rep. No. 95–595, 95th Cong., 1st Sess., 174–5 (Bankruptcy Reform Act of 1978), U.S.

Code Cong. & Admin.News 1978, pp. 5787, 6134, 6135.

One court has held that access to assets that are necessary to the business's future vitality are exempt regulatory matters, and not even property of the debtor's estate since the assets were useful only through further regulation. *In re Braniff Airways*, 700 F.2d 935 (5th Cir.1983) (landing slots necessary for reorganization were not subject to bankruptcy court orders over FAA).

On the other hand, there are cases restricting the exemption from the stay to matters directly affecting the public safety, which should not be interrupted pending a hearing to lift the stay. Others have held that some parallel proceedings, like competing license applications, that might require some distraction to the debtor's reorganization effort are not stayed through the exemption even though they do not involve palpable health hazards. *See Jordan v. Randolph Mills, Inc.*, 716 F.2d 1053 (4th Cir.1983); *In re D.H. Overmyer Telecasting Co., Inc.*, 35 B.R. 400 (Bankr.N. D.Ohio 1983).

### 10. *Governmental Actions Not Excepted from the Stay.*

Ignoring the distinction between "all" and "police-regulatory" is easy and wrong; by the plain terms of the statute there are governmental actions that are not exempted from the stay. To determine whether a governmental function is among those that should be exempt, the court must evaluate the function of the regulation, the probability of direct public harm, the opportunity for the public interest to be effectively represented in the bankruptcy proceeding, and the relation between the regulation and the financial, legal, and structural requirements for an effective reorganization. *See In re King Memorial Hospital, Inc.*, 4 B.R. 704 (Bankr.S.D.Fla.1980); *In re Joe DeLisi Fruit Co.*, 11 B.R. 694 (Bankr.D. Minn.1981).

Both the Board's generalized, diffuse interest in the holding company as well as the duplicative, distracting hearings militate for its being not exempt from the stay.

### 11. *Reorganization by Subterfuge.*

MCorp argues that the current state of regulatory orders issuing from the Board is effectively an attempt by the Board to control the estate of the Debtor for the purpose of dictating MCorp's future structure. While this appears plausible, it is unnecessary to address it in detail because the stay applies to most of the regulation and because the Board is subject to the anti-interference prohibition. 11 U.S.C. § 105.

The bankruptcy court can scrutinize the potential for undisclosed motivations when the Board presents a motion to lift the stay.

### 12. *Anti–Interference Authority.*

Whatever the role of the automatic stay, the bankruptcy code authorizes an injunction against third parties from conducting otherwise fully legitimate actions when those actions would impede the viability of the debtor's reorganization. The Board claims an exemption from the anti-interference power parallel to the regulatory exemption from the automatic stay. Virtually any company is subject to a variety of regulatory agencies, and no reorganization would be possible without requiring the federal, state, and local authorities to submit their claims through the bankruptcy process. Securities issued as a consequence of a bankruptcy supervised reorganization are expressly exempt from the registration requirements of the Securities and Exchange Commission. 11 U.S.C. § 1145.

The court shares the Board's concern that the laudable but limited purposes of bankruptcy not be perverted into an escape from regulation. The bankruptcy process includes a vigilant, fully empowered judge who will prevent individual or collusive efforts to evade the Debtor's responsibilities to the public.

The Board's interest in MCorp, as distinct from the comptroller or FDIC's inter-

est in the banks, is secondary and diffuse. The overlapping authority between bank regulators and bankruptcy courts is resolved in favor of the court. As an example, when responding to a receivership imposed by a district court under the Securities and Exchange Commission's authority, it has been said that "To the extent that the exercise of this jurisdiction threatens the assets of the debtor's estate, the bankruptcy court may issue a stay of those proceedings." *Securities & Exch. Comm'n v. First Fin. Group of Texas,* 645 F.2d 429, 440 (5th Cir.1981).

### 13. *Conclusion.*

While the operation of the banking system under the guidance of the Board is an important interest, congress has also recognized the importance of allowing debtors to restructure so that they may make a contribution to the economic vitality of the country. Under the circumstances of a bank holding company with nonbank subsidiaries, accommodation of the two national interests in bankruptcy and banking requires that the bankruptcy court have primacy over the non-operations aspects of the debtor and that the Board, after participating, abide by the capital allocation and structural aspects of the debtor as determined in the bankruptcy rather than conducting its independent actions.

The court is mindful that a debtor that follows MCorp's precedent may attempt to abuse the opportunity furnished by the bankruptcy code, but the principle here is clear, and it must be applied with care, even here. The court is also mindful of who was paid to prevent the bank practices that resulted in the collapse of the system in the Southwest. Neither side has an occasion for self-righteousness.

The Board will be enjoined to allow the claims in its pending charges to abate, except through the bankruptcy court.

Signed on June 19, 1989, at Houston, Texas, correcting case numbers and descriptions in the "Background of the Con-

troversy" section of the opinion of June 9, 1989.

APPENDIX A.

A–C represent remaining subsidiary banks.
D–F represent subsidiary banks declared insolvent.
G–H represent nonbank subsidiaries.

PRELIMINARY INJUNCTION AGAINST THE FEDERAL RESERVE SYSTEM'S PROCEEDING ADMINISTRATIVELY AGAINST MCORP

### 1. *Parties.*

  A. The parties plaintiff are:

    (1) MCorp, a bank holding company;

    (2) MCorp Financial, Inc., a non-bank subsidiary of MCorp; and

    (3) MCorp Management, a non-bank subsidiary of MCorp.

    (4) Each of the plaintiffs are debtors in possession (MCorp collectively).

  B. The Official Creditors Committee formed under the bankruptcy statutes has been allowed to intervene.

  C. The party defendant is the Board of Governors of the Federal Reserve System of the United States (Board).

2. *Related Proceedings.* This civil action was an adversary proceeding in the consolidated bankruptcy case to reorganize MCorp, and the reference by the district court to the bankruptcy court was withdrawn. (Adversary Number 89–0298.) The other actions are:

A. An involuntary petition was filed in the Southern District of New York against MCorp, and it was transferred here to pend under Case Number 89–02848–H2–11.

B. A voluntary petition was filed in the Southern District of Texas by MCorp Management under Case Number 89–02324–H5–11.

C. A voluntary petition was filed in the Southern District of Texas by MCorp Financial, Inc., under Case Number 89–02312–H3–11.

D. The three bankruptcy actions have been consolidated under the earliest case number for joint administration.

3. *Reasons.* The court finds these to be reasons to grant injunctive relief:

A. The allocation of power to supervise bank holding companies conflicts when the corporation has sought protection under the bankruptcy statutes, and the conflicts can be minimized only through the intervention of the court.

B. The waste and confusion attendant upon parallel bankruptcy and administrative proceedings would defeat the legislative expectation of both sets of statutes, harm irreparably the estates of the bankrupts and their creditors (including the various governmental claims), escalate transaction costs by duplication and conflict, and protect no public interest or governmental function not fully addressable in the bankruptcy proceeding.

C. Prevalence on the merits in this case appears to be reduced to a correct interpretation of which public forum has precedence when a bank holding company has subsidiaries that include non-banks; however, MCorp is likely to prevail on its claim that the executive's administrative power over bank holding companies is preempted by the bankruptcy power which congress has confided to the judiciary.

D. Neither an interest of the public nor an interest of a group of nonparties will be harmed by this injunctive solution to the regulatory conflict.

4. *Restraint.* It is decreed that:

A. The Board is preliminarily enjoined from prosecuting:

(1) Notice of Charges dated October 19, 1988;

(2) Amended Notice of Charges dated October 26, 1988;

(3) Notice of Charges dated March 30, 1989, and;

(4) Second Amended Notice of Charges dated May 24, 1989, issued by the Board to MCorp, and

B. The Board is preliminarily enjoined from enforcing the temporary desist orders issued by the Board to MCorp. dated October 19, 1988, and October 26, 1988.

C. The Board may continue its general execution, supervisory, and examination duties of the operations of MCorp and its bank subsidiaries and may continue its central bank duties as they affect MCorp in common with all other institutions.

D. The Board is enjoined from using its authority over bank holding companies or banks to attempt to effect, directly or indirectly, a reorganization of the MCorp group or its components or to interfere, except through participation in the bankruptcy proceedings, with the restructuring being developed in the bankruptcy proceeding.

E. The restraint of this order is effective against the governors, the Federal Reserve System, its employees, its agents, and those acting in concert with them; however, the restraint does not apply to parallel agencies of the government like the Comptroller of the Currency or the Federal Deposit Insurance Corporation as they may indepen-

dently pursue their regulatory mandates.

5. *Prospective Board Actions.*

  A. The Board shall present proposed new administrative proceedings by it against MCorp or the proposed issuance of new notices of charges or new temporary desist orders to MCorp.

  B. If the parties cannot agree that the subject of the new proceeding is within the category of regulation exempted from this injunction, then the proposed action shall be presented to this court to determine whether it is an operational issue for the Board or an asset-structural issue for the bankruptcy court.

6. *Further Proceedings.*

  A. Under emergency scheduling, the parties may seek modification of this order after notice to the parties.

  B. The trial will not be set until the bankruptcy court has had a reasonable opportunity to address the issues raised by MCorp having subsidiaries banks and non-banks.

  C. A status conference is set for:

August 15, 1989
10:00 a.m. Tuesday.

Signed on June 19, 1989, at Houston, Texas, correcting case numbers and descriptions in the "Related Proceedings" section of the judgment rendered on June 2, 1989, and signed June 3, 1989.