In re DELTACORP, INC., Debtor.

DELTACORP, INC., Plaintiff,

v.

OFFICE OF THRIFT SUPERVISION, Resolution Trust Corporation, Federal Deposit Insurance Corporation and the Honorable Mary Little Parell, as Commissioner of Banking for the State of New Jersey, Defendants.

Bankruptcy No. 89 B 11759 (TLB).
Adv. No. 89–6273A.

United States Bankruptcy Court,
S.D. New York.

March 13, 1990.

Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein by David Friedman, New York City, for Deltacorp, Inc.

Jordan Luke, General Counsel, Thomas J. Segal, Associate General Counsel, Steven W. Dimmick, Sr., Washington, D.C., for Office of Thrift Supervision.

Debevoise & Plimpton by Steven Klugman, Edwin G. Schallert, New York City, Dorothy L. Nichols, Associate General Counsel, Vivian A. Comer, Thomas A. Schulz, Asst. General Counsels, Kathryn Norcross, Sr. Counsel, Rodney D. Ray, Sr. Atty., Washington, D.C., for Resolution Trust Corp. and Federal Deposit Ins. Corp.

Peter N. Perretti, Jr., Atty. Gen. of New Jersey, Jack M. Sasatino, Asst. Atty. Gen., of counsel, Sharon L. Young, Barbara S. Goldsmith, Deputy Attys. Gen., for the Honorable Mary Little Parell, as Com'r of Banking for State of N.J.

TEXT OF BENCH RULING DELIVERED ON NOVEMBER 2, 1989

TINA L. BROZMAN, Bankruptcy Judge.

Deltacorp. Inc. (Deltacorp), the debtor in possession in this chapter 11 case and the ultimate 53% parent of a non-debtor holding company which owns an insolvent; federally insured savings and loan association called Colonial Savings Bank (Colonial), seeks a preliminary injunction preventing for the Office of Thrift Supervision (OTS), the Resolution Trust Corporation, the Federal Deposit Insurance Corporation and the

Commissioner of Banking for the State of New Jersey (collectively, the defendants) from appointing, for a minimum of sixty days, a receiver for Colonial. This relief is sought to enable Deltacorp to pursue the possible private sale of Colonial free from the very real threat that operating control of Colonial will be removed from the management of Colonial and, ultimately, Deltacorp.

Deltacorp's acute interest in Colonial is bottomed not on the value of Colonial to its shareholders, which value is at best *de minimis,* but on the liability which Deltacorp has in essence guaranteed by virtue of its entry into a net worth maintenance agreement (Net Worth Agreement) with, among others, the Federal Savings and Loan Insurance Corporation and the Federal Home Loan Bank Board. Colonial's regulatory capital deficit, which Deltacorp is obligated to eliminate through capital infusions, is currently in the vicinity of $23,000,000. Operating losses are increasing monthly by some $600,000. With the government's announcement of anticipated new regulations in several days which will prohibit savings and loan associations from attributing value to certain assets, the regulatory capital deficit will likely rise by approximately an additional $10,500,000. There is no dispute that Deltacorp, whose assets are in the $15,000,000 to $20,000,000 range and whose debts exclusive of the Net Worth Agreement are in the neighborhood of $40,000,000, lacks the financial wherewithal to meet any capital calls upon it. Thus Deltacorp has determined that it wishes to sell Colonial to reduce or eliminate the liability under the Net Worth Agreement. To this asserted end Deltacorp seeks the injunction, claiming that it is better able to effect a sale than would be a receiver.

Although Deltacorp has no contract of sale in place, it has received a written expression of interest from Lehigh Financial Corporation (Lehigh), which currently owns a savings and loan. A few other entities have orally expressed an interest in acquiring Colonial as well, but there are no offers in writing. Deltacorp seeks its injunction under 11 U.S.C. § 105(a) to aid in Deltacorp's reorganization.

In opposition, the defendants assert among other things that: (1) I am without jurisdiction to enjoin the appointment of a receiver authorized under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (FIRREA); (2) Section 109 of the Bankruptcy Code prohibits the grant of the requested relief to a banking entity; and (3) Deltacorp has failed to meet the criteria for the issuance of a preliminary injunction. Notwithstanding the jurisdictional challenge, the defendants concede that, at a minimum, there could be sold through this court a solvent non-debtor bank in accordance with banking regulations. With that concession in place, we begin with section 105.

■ Section 105 is not a jurisdictional statute *per se.* The jurisdiction of the district court over bankruptcy cases is delineated in 28 U.S.C. § 1334. Those matters within the jurisdiction of the district court which may be referred to the bankruptcy court are provided for in 28 U.S.C. § 157. An action brought to enjoin proceedings in another forum that conflicts with a debtor's reorganization and that will affect the administration of a debtor's estate is, by its nature, a core proceeding which may be finally adjudicated by the bankruptcy court. *In re Johns–Manville Corp.,* 801 F.2d 60, 64 (2d Cir.1986). As I have observed before, the court's power under section 105(a) is not circumscribed by a *res.* The basic purpose of the section is to enable the court to do whatever is necessary to aid its jurisdiction, in other words, anything arising in or relating to a bankruptcy case. *C & J Clark America, Inc. v. Carol Ruth, Inc. (In re Wingspread Corporation),* 92 B.R. 87, 94 (Bankr.S.D.N.Y.1988) citing 2 L. King, *Collier on Bankruptcy,* ¶ 105.02 at 105–7 (15th ed. 1988).

■ Section 105 is an aid to the exercise of jurisdiction. It does not create substantive rights which do not exist or are otherwise unavailable under applicable law. *See In re Compton Corp.,* 90 B.R. 798, 807 (N.D.Tex.1988). But unless there is anoth-

er statute somewhere which divests me of jurisdiction, I am empowered to issue the injunction sought by Deltacorp. *See Beker Industries Corp. v. Florida Land & Water Adjudicatory Commission*, 57 B.R. 611 (Bankr.S.D.N.Y.1986).

■ The defendants point to FIRREA for that asserted jurisdictional limitation. I do not believe that such a jurisdictional limitation exists. Whereas Sec. 301 § 5(d)(2)(C) of FIRREA vests the Director of OTS with the power and jurisdiction to appoint a receiver for insured, state-chartered savings and loans *ex parte* and without notice, and whereas Sec. 301 § 5(d)(2)(G) prohibits any court from taking any action to restrain or affect the exercise of powers or functions of a conservator or receiver, FIRREA does not expressly restrain a court from prohibiting the appointment of a receiver. I think it is clear, for example, that I could restrain a proven bad faith attempt to enforce the law such as if the defendants were acting in willful disregard of the law or solely to harass the debtor. *See National Hospital and Institutional Builders Company v. Goldstein (In re National Hospital and Institutional Builders Company)*, 658 F.2d 39 (2d Cir.1981), *cert. denied sub nom. Goldstein v. Garrity*, 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982) (Act case).

But all this is not to say that the power to enjoin is tantamount to the propriety of enjoining. I think it fairly clear not only from FIRREA but from section 109 of the Bankruptcy Code itself, that Congress did not mean to entrust to bankruptcy judges, who are specialists in an area other than banking, the determination of when a receiver should be appointed. Significantly, Deltacorp has not even argued that it has any grounds on which to defeat the appointment of a receiver.

Section 109 of the Bankruptcy Code declares a savings and loan association ineligible for chapter 11 or chapter 7 relief. This is so because banking institutions are subject to various other regulatory laws which govern their operation. 2 L. King, *Collier on Bankruptcy*, ¶ 109.02 (15th Ed. 1986). Indeed, courts interpreting Section 109 have found it "difficult to imagine a more clear statement of congressional intent" that the Code's provisions are not to be applied in the reorganization or liquidation of a banking institution. *In re Peoples Bankshares, Ltd.*, 68 B.R. 536, 540 (Bankr.N.D.Iowa 1986) citing *In re Bankers Trust Co.*, 566 F.2d 1281, 1286 (5th Cir.1978).

In *Peoples Bankshares*, the court refused to extend the automatic stay provisions of section 362 to enjoin a state agency from liquidating five savings and loans associations which were subsidiaries of the debtor. The debtor argued that the five subsidiaries were assets of the estate protected by the stay. The court nonetheless dismissed the complaint for failure to state a claim based upon the policy behind section 109.

In urging that I grant this injunction notwithstanding section 109, Deltacorp relies heavily on the recent decision in *MCorp. Inc. v. Board of Governors of the Federal Reserve System, (In re MCorp Inc.)*, 101 B.R. 483 (S.D.Tex.1989). But a careful reading of *MCorp*, which did not involve section 109, indicates that injunctive relief is not appropriate here.

The *MCorp* debtor was a bank holding company which together with two of its nonbank subsidiaries sought a preliminary injunction against the federal reserve system's Board of Governors (the Board). The Board had initiated administrative actions against the bank holding company for violations of certain regulatory requirements regarding the assurance of "financial strength" for the banking institutions it owned. The Board acted pursuant to its authority under Title 12 of the United States Code, while the debtor asserted that the bankruptcy provisions of Title 11 should control. The court held that its "power over the entirety of the debtor's estate took precedence" over the authority vested in the Board under Title 12. 101 B.R. at 487. After finding that the debtor had met the criteria for the issuance of a preliminary injunction, the court cited section 105 and granted the requested relief. *Id.* at 489–90.

■ In *MCorp*, the banking authority contemplated action directly against the debtor. Not so here. The defendants seek to appoint a receiver for Colonial, a non-debtor entity only partially owned by a subsidiary of a Deltacorp subsidiary. In *MCorp*, some of the debtor's banking subsidiaries had already been taken over by a receiver; the district court did not attempt in any manner to affect the discharge of the receiver's duties. Nor did the district court issue an injunction such as is sought here. Rather, the district judge expressly recognized in *MCorp* that the primacy of the bankruptcy code provisions over the banking regulations of Title 12 extended only to the non-operations aspects of the debtor. Yet the protestations of Deltacorp notwithstanding, it is precisely those operational aspects of Colonial which Deltacorp asks me to affect, for there is no more substantial effect on operations than the right to determine who will constitute management. What Deltacorp seeks is a great deal more than the 60·day window in which it cloaks its request. It seeks the right to determine whether, when and how Colonial should be liquidated. It seeks in essence to shift to the defendants the burden of showing that Deltacorp's efforts should be terminated, notwithstanding that FIRREA contemplates swift and decisive, *ex parte* action by the defendants.

Deltacorp's counsel made in this regard a telling analogy. He suggested that this is much like my determining whether a debtor should be permitted to remain in chapter 11 or converted to chapter 7 liquidation. But Colonial is not and cannot be a debtor in this court. What Deltacorp asks, at base, is that under the rubric of protecting an asset I take Colonial under my·wing and treat it as though it were a debtor. That is not appropriate nor do I believe that type of protection to be the thrust of the *MCorp* decision. There is no question that if a receiver were not appointed, Deltacorp could sell its banking subsidiary through this court subject to regulation. But Deltacorp possesses no such unfettered control. Congress has unequivocally declared that it is the province of the defendants to determine whether and when a receiver should be appointed.

Moreover, Deltacorp has not established the grounds for the granting of an injunction. It has not shown that it can successfully reorganize. It has not shown that with an injunction it can sell Colonial. The Lehigh proposal is contingent upon a great many conditions, including a satisfactory audit and regulatory approval for the sale. Other expressions of interest are no more than that.

Deltacorp has also failed to prove that it will be irreparably injured in the absence of an injunction. The harm alleged by Deltacorp is that the appointment of a receiver will have the twofold effect of killing its ability to sell Colonial and allowing the defendants to immediately pursue a claim for the $23 million capital infusion required under the Net Worth Agreement.

But there has been no showing that the appointment of a receiver would prohibit the sale of Colonial. In fact, Deltacorp's new chief executive officer, Edward Moran, testified that the government clearly had the ability to sell Colonial. To some extent, the defendants and Deltacorp share an interest in seeing that Colonial be recapitalized as quickly and efficiently as possible. The defendants recognize in their opposition papers that although an immediate claim against Deltacorp will exist, the likelihood of collecting 100% of the capital infusion from an entity itself in bankruptcy is doubtful. Any deficiency will come out of the defendants' own already stressed coffers. Therefore, I have to believe defendants will pursue any viable sale of Colonial at least as diligently as would Deltacorp. Along these lines, Mr. David Dorgan of OTS testified that· in at least one instance of which he was aware, a failed savings and loan was sold almost simultaneously with the appointment of a receiver. I see no reason to accept Deltacorp's surmise that the defendants cannot or will not attempt to expeditiously sell Colonial if a receiver is appointed.

The appointment of a receiver will not in and of itself trigger Deltacorp's exposure under the Net Worth Agreement. That exposure already exists. No showing was

made that Lehigh has agreed to eliminate Deltacorp's exposure. In fact, if the negative capital is sufficiently high, Lehigh could easily balk at the purchase. The essence of the harm alleged here is that through actions taken by regulatory authorities, an unliquidated liability may become fixed. That harm does not rise to the level of irreparable injury sufficient to sustain the extraordinary relief here sought.

Conversely, I find that defendants will suffer significant harm in the event they are enjoined from fulfilling their congressionally mandated functions. Deltacorp admits that Colonial's operating losses continue to accrue on a daily basis. Further, Deltacorp acknowledges that it has no source of internal funds to cover either the existing capital deficiency or the amounts that are continuing to accrue. As noted, any of Colonial's deficiencies which cannot be met by Deltacorp must ultimately be satisfied out of the limited funds of the defendants.

Distilling Deltacorp's proposal one sees that Deltacorp seeks during the injunctive period to gamble with the defendants' money while it attempts to bring to consummation a sale of dubious potential. Mr. Moran testified that Colonial does not have a president and that other executive personnel are assuming expanded responsibilities and authority. He conceded that he has not reviewed the books and records of Colonial and that he has no personal experience regarding the sale of banking institutions. He further acknowledged that he has no idea as to some very salient terms of the proposed sale to Lehigh, such as the amount of capital Lehigh would infuse or what Lehigh would consider a satisfactory audit. I am also concerned with the duration of the exposure that defendants will have to bear if Deltacorp's relief is granted. Initially, Deltacorp asked for a sixty day period to allow due diligence, which has not yet begun, to be undertaken. At today's hearing Deltacorp indicated that it might well be back at the expiration of that time to extend the injunction if progress had been made. Not only is the outcome of Deltacorp's efforts uncertain but so, too, is the length of time Deltacorp needs to reach its determination of whether it can or can-

not sell Colonial. This time factor is important because the government is entitled to the immediate and *ex parte* authority to appoint a receiver. This authority should be enjoined, if at all, only upon a showing of likely benefit and then only for a precise period of time. Neither the likely benefit nor the likely short life of injunctive protection has been shown here.

The public interest must be considered as well. There is a significant public interest in adhering to Congress' clear intent that the ailing savings and loan industry be treated with swift and extraordinary attention. The sweeping authority granted the defendants to act on an *ex parte* basis in appointing a receiver cannot be lightly disregarded. The injunctive relief requested by Deltacorp seriously encroaches upon that authority and simply cannot be granted on the record that has been developed.

Accordingly, the debtor's motion is denied as is defendants' motion to dismiss or abstain.