**In re ISLAND REACH PARTNERS, LTD., Debtor.**

**ISLAND REACH PARTNERS, LTD., et al., Plaintiffs,**

**v.**

**RESOLUTION TRUST CORPORATION, as Conservator for HomeFed Bank, F.A., Defendant.**

**Bankruptcy No. 92–30063–BKC–RAM. Adv. No. 92–1277–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 6, 1993.

Robert C. Furr, Furr & Cohen, P.A., Boca Raton, FL, for plaintiffs.

Lance A. Baker, Ruden, Barnett, McClosky, Smith, Schuster & Russell, Fort Lauderdale, FL, for defendant.

Joseph A. Guzinski, Complex Litigation Div. of Legal Services, Resolution Trust Corp., Washington, DC.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

In this adversary proceeding, the plaintiffs seek to enjoin the Resolution Trust Corporation ("RTC"), as conservator for HomeFed Bank, F.A., ("New HomeFed") from the sale of the debtor's note and mortgage. The note and mortgage are held by the RTC as part of a pooled sale of notes and mortgages presently under contract to an undisclosed buyer. The plaintiffs are Island Reach Partners, Ltd., the debtor in this Chapter 11 case ("Island Reach" or "Debtor"), and three of Island Reach's principals, John Chappelear, Bernard Zimmerman, and Newton Mandel (the "Principals").

On January 11, 1993, the Court conducted a hearing on the plaintiffs' Emergency Motion for Preliminary Injunction and the RTC's Motion to Dismiss. The Court reviewed the pleadings and memoranda and considered the arguments of counsel and testimony at the hearing. Since 12 U.S.C. § 1821(j) precludes this Court from granting the injunctive relief requested, the plaintiffs' Complaint to Obtain Preliminary and Permanent Injunctive Relief (the "Complaint") will be dismissed with prejudice and the plaintiffs' Emergency Motion for Preliminary Injunction ("Motion") will be denied.[1]

## BACKGROUND

The Debtor and co-plaintiffs in this proceeding are the developers and owners of property and an apartment complex located in Palm Beach County, Florida. On December 21, 1988, the Debtor borrowed $17,200,000 from Home Federal Savings and Loan Association ("Old HomeFed") for acquisition of the Debtor's real property and development and construction of a 280–unit apartment complex. To evidence the loan, the Debtor executed a promissory note ("Note"), guaranteed in part by the Principals. The loan is secured by a first mortgage ("Mortgage") on the property and certain other collateral.

The Debtor filed its Chapter 11 petition on January 10, 1992. Almost six months later, on July 6, 1992, the Note and Mortgage were transferred to the RTC when the Office of Thrift Supervision declared Old HomeFed insolvent and appointed the RTC as receiver for Old HomeFed pursuant to 12 U.S.C. § 1464(d)(2)(E). A series of transactions transferred the Note and Mortgage to the RTC, as conservator of New HomeFed.[2] Based on the testimony of Mr. Chappelear, at some point subsequent to the transfer of the Note and Mortgage to the RTC, representatives of the Debtor and the RTC began negotiations for restructuring the Debtor's loan. In the course of these negotiations the RTC representatives encouraged the Debtor to make a proposal for restructuring the Note and Mortgage. RTC representatives advised Mr. Chappelear that any proposal of the Debtor would receive serious consideration.

In late November or early December 1992, the RTC halted negotiations based upon its

1. At the conclusion of the January 11, 1993 hearing, the Court announced its findings and conclusions and its ruling denying injunctive relief and granting the motion to dismiss. The parties proceeded in accordance with the bench ruling and the RTC concluded its sale of the note and mortgage.

2. On July 6, 1992, the Director of the Office of Thrift Supervision ("OTS") declared Old HomeFed insolvent and appointed the RTC as receiver ("RTC–Receiver") for Old HomeFed pursuant to 12 U.S.C. § 1464(d)(2)(E). By operation of law, RTC–Receiver succeeded to all rights, powers, titles and privileges of Old HomeFed. On the same day, the OTS chartered a new mutual thrift known as HomeFed Bank, F.A. ("New HomeFed"). Pursuant to a purchase and assumption agreement between the RTC–Receiver and New HomeFed, New HomeFed purchased all of the RTC–Receiver's right, title and interest in and to Old HomeFed's assets, including the Note and Mortgage. OTS then appointed the RTC as conservator for New HomeFed. It is in its capacity as conservator that the RTC appears in this proceeding.

decision to sell the Note and Mortgage. More specifically, it decided to include the Note and Mortgage in what it calls a Multiple Investor Fund ("MIF"), essentially a large pool of RTC assets that are sold to groups of investors. As of the January 11th hearing on the motion, the pool that includes the Debtor's Note and Mortgage was under contract to an undisclosed party, with the sale of the pool scheduled to close on January 13, 1993.

On December 14, 1992, after learning of the RTC's plans to sell the Note and Mortgage, the plaintiffs filed their Complaint and Motion seeking to enjoin the anticipated sale. The RTC filed a timely response arguing: (1) that under 28 U.S.C. § 1334, this Court lacks subject matter jurisdiction to grant the requested relief; (2) that under 12 U.S.C. § 1821(j) this Court lacks jurisdiction to enjoin the RTC; and (3) that the facts of this case do not warrant an injunction. The RTC requests that the Motion be denied and that the Complaint be dismissed with prejudice.

### DISCUSSION

#### A. Jurisdiction under 28 U.S.C. 1334

■ The RTC first challenges this Court's subject matter jurisdiction under 28 U.S.C. § 1334. Section 1334(b) grants the district court (and by reference the bankruptcy court) original but not exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under Title 11." In determining whether jurisdiction exists under 28 U.S.C. § 1334(b), it is necessary to determine whether a civil proceeding is related sufficiently to a bankruptcy case to confer jurisdiction. *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990). The test for determining if such a relationship exists is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Id.,* 910 F.2d at 788 *quoting Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).

In this case, jurisdiction under 28 U.S.C. § 1334 exists if the plaintiffs prove their entitlement to injunctive relief by showing, among other things, the threat of irreparable harm. Irreparable harm would constitute sufficient "effect on the estate" to satisfy the jurisdictional requirements for this proceeding. Thus, there is a sufficient nexus between the estate and the facts as pled to confer subject matter jurisdiction on this court under 28 U.S.C. § 1334 to hear and consider plaintiffs' request for relief.

#### B. 12 U.S.C. § 1821(j) Precludes this Court from Enjoining the RTC

■ Section 212(j) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified at 12 U.S.C. § 1821(j), provides that "no court may take any action ... to restrain or affect the exercise of powers or functions of the [RTC] as a conservator or a receiver."[3] The case law is well settled that in enacting 12 U.S.C. § 1821(j), Congress decreed that courts shall have no subject matter jurisdiction to enjoin the RTC's exercise of its powers and duties as conservator or receiver. *See In re Landmark Land Co. of Okla.,* 973 F.2d 283 (4th Cir.1992); *Gross v. Bell Savings Bank, PA SA,* 974 F.2d 403 (3d Cir.1992); *281–300 Joint Venture v. Onion,* 938 F.2d 35 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

■ Anti-injunction provisions like 12 U.S.C. § 1821(j) apply in bankruptcy proceedings notwithstanding 11 U.S.C. § 105, *see Board of Governors of Fed. Reserve Sys. v. MCorp. Fin., Inc.,* —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), and supersede the Court's general equitable powers under 11 U.S.C. § 105. *See, e.g., Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Landmark Land Co. v. Office of Thrift Supervision,* 948 F.2d 910 (5th Cir.1991); *In re American Hardwoods, Inc.,* 885 F.2d 621 (9th Cir.1989); *In re Heritage Village Church and Missionary Fellowship, Inc.,* 851 F.2d 104 (4th Cir. 1988); *In re Petrusch,* 667 F.2d 297 (2d

---

**3.** 12 U.S.C. § 1821(j) is expressly made applicable to the RTC by 12 U.S.C. § 1441a(b)(4)(A).

Cir.1981), *cert. denied*, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982).

The plaintiffs contend that 12 U.S.C. § 1821(j) is inapplicable to this case because the RTC allegedly will violate certain of its statutory mandates by selling the Note and Mortgage as part of the MIF rather than accepting the Debtor's offer for these assets. The plaintiffs claim the Debtor is offering to pay substantially more to buy the Note and Mortgage than the RTC will receive in its MIF transaction. Consequently, according to the Debtor, the anticipated MIF transaction will violate the RTC's statutory duty to maximize the return from the sale of failed institutions' assets and thereby minimize losses.[4]

The Debtor's argument confuses the essential distinction between the existence of the RTC's power under Title 12 and the exercise of those powers by the RTC. The plaintiffs do not contend that the RTC lacks the power to sell the Note and Mortgage. One of the RTC's most basic and crucial powers as conservator or receiver is the power to sell assets of the insolvent thrift.[5] The plaintiffs simply question whether the RTC exercises this power properly in the sale of the Note and Mortgage to a third party for less than what the Debtor is offering. Considering the evidence in a light most favorable to the plaintiffs, they have at most shown that the Debtor is offering a gross sales price that exceeds the potential gross amount allocated to the Note and Mortgage in the MIF transaction.[6] This evidence, however, only challenges the RTC's judgment in the exercise of its power to sell the

Note and Mortgage, not the existence of the power itself. The plaintiffs' evidence is thus insufficient to overcome the limits imposed on this Court under 12 U.S.C. § 1821(j).

Federal Circuit Courts of Appeal that have considered challenges to the exercise of the RTC's power in similar circumstances overwhelmingly have refused to enjoin the RTC simply because of questions about the exercise of one of its statutorily mandated powers. For example, in *Onion*, 938 F.2d 35, the Fifth Circuit upheld a district court decision denying a motion for preliminary injunction prohibiting a foreclosure sale of property. As in this case, the plaintiffs in *Onion* claimed that the RTC was not properly exercising its powers in the disposition of its assets. Also, as in this case, the power at issue was clearly within those granted to the RTC by Congress. Relying on *Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the *Onion* Court stated:

> In *Coit*, the Court stated that a court may not grant injunctive relief unless the power or function whose exercise is sought to be enjoined is beyond the powers granted to the RTC by statute. The function under consideration here is the ability of the conservator to foreclose on the property of a debtor, a power that Congress gave to the RTC under FIRREA. Indeed, when the RTC acts as a conservator or receiver, it has broad authority to dispose of assets and to "collect all obligations and money due the [failed] institution." Hence, the

---

**4.** 12 U.S.C. § 1441a(b)(3) provides in relevant part as follows:

(3) The duties of the [RTC] shall be to carry out a program, ... including:

(C) To conduct the operations of the [RTC] in a manner which—

(i) maximizes the net present value return from the sale or other disposition of institutions ... or the assets of such institutions;

(ii) minimizes the impact of such transactions on local real estate an financial markets;

(iii) makes efficient use of funds obtained from the Funding Corporation or from the Treasury;

(iv) minimizes the amount of any loss realized in the resolution of cases; and

(v) maximizes the preservation of the availability and affordability of residential real property for low and moderate-income individuals.

**5.** 12 U.S.C. § 1821(d)(2)(B)(i) authorizes the RTC as conservator or receiver to "take over the assets of and operate the insured depository institution ... and conduct all business of the institution." Section 1821(d)(2)(B)(ii) permits the RTC as conservator or receiver to "collect all obligations and money due the institution."

**6.** It is entirely possible that the net return to the RTC on the Note and Mortgage will be greater in the MIF transaction, because of the administrative, legal, and other costs it will save by not having to liquidate these assets itself.

court may not enjoin the exercise of the RTC's powers in this instance ... regardless of [the plaintiff's] likelihood of success on the underlying claims ... (citations omitted)

*Onion*, 938 F.2d at 39.

The Fourth Circuit similarly rejected the availability of injunctive relief in *In re Landmark Land Co. of Okla.*, 973 F.2d 283, 290 (4th Cir.1992). In *Landmark*, the court dissolved a preliminary injunction against the RTC which the district court had entered to prevent the RTC as conservator from calling a shareholder's meeting or exercising any right as a shareholder of the debtor corporations which were wholly owned subsidiaries of the institution in RTC receivership. The court reasoned that "[t]he comprehensive scheme of FIRREA indicates Congress' intent to allow the RTC full rein to exercise its statutory authority without injunctive restraints imposed by bankruptcy courts or district courts in other proceedings," 973 F.2d at 290. *See also Telematics Int'l., Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir.1992) (Congress enacted 12 U.S.C. § 1821(j) "[t]o enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution" and therefore lower court lacked jurisdiction to enjoin attachment of a certificate of deposit); *Gross v. Bell Sav. Bank, PA SA*, 974 F.2d 403, 408 (3d Cir. 1992) ("[T]he availability of injunctive relief does not hinge on our view of the proper exercise of otherwise-legitimate powers ... [U]nder § 1821(j), ... the district court does not have the ability to enjoin activity by the RTC where the [RTC] is colorably acting within its enumerated powers."); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397 (3d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (court could not enjoin the RTC's termination of ERISA plan even if termination was "illegal").

In sum, the clear language of § 1821(j) prohibits this Court from enjoining the sale of Debtor's Note and Mortgage. Since the sale is an action squarely within one of the RTC's designated powers this Court has no jurisdiction to intervene in the sale even if the terms of the sale are arguably inconsistent with the RTC's statutory mandates. Based upon 12 U.S.C. § 1821(j), plaintiffs' request for temporary and permanent injunctive relief must be denied.

## C. The Traditional Elements of a Preliminary Injunction Have Not Been Met

■ Distinct from the issue of jurisdiction is the failure of the Debtor to allege and prove sufficient grounds for an injunction. In order to be entitled to the injunctive relief requested, the Debtor must establish

(1) a substantial likelihood that he will ultimately prevail on the merits; (2) a showing that he will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to him outweighs the harm the injunction may cause the opposing party; and (4) a showing that granting the injunction would not be adverse to the public interest.

*Duke v. Cleland,* 954 F.2d 1526, 1529 (11th Cir.1992); *Accord, Cunningham v. Adams,* 808 F.2d 815, 819 (11th Cir.1987).

The Debtor is unlikely to succeed in stopping the sale of the Note and Mortgage. As discussed above, any injunctive relief against the RTC would violate 12 U.S.C. § 1821(j). Further, the plaintiffs have not demonstrated a likelihood of proving that the RTC has violated its statutory mandates. Even if the plaintiffs were somehow successful in showing that the Debtor will pay substantially more to buy the Note and Mortgage than the RTC will receive in its MIF transaction, the plaintiffs have failed to prove that the MIF transaction will not maximize the return on the pooled assets and thereby comply with the RTC's statutory mandates.[7]

The plaintiffs also have failed to show how the RTC's anticipated sale of the Note and

---

7. The factual premise for plaintiffs' argument demonstrates the purpose and importance of § 1821(j). Absent this statutory protection, the RTC would undoubtedly be mired repeatedly in costly, time-consuming litigation challenging its judgment in the exercise of its powers.

Mortgage will irreparably harm the Debtor. Any offer that the Debtor could make to the RTC, the Debtor can just as well propose to the Note and Mortgage purchaser.[8]

While the sale does not harm the Debtor, the proposed injunction could substantially injure the RTC–Conservator by jeopardizing the sale of the Note. Such injunctions, if allowed, could undermine the RTC's ability to deal with the thrift crisis. The effects of the injunction on the RTC's ability to carry out its statutory functions and powers as conservator or receiver[9] are potentially devastating to the public interest. Congress provided the RTC with "full rein to exercise its statutory authority without injunctive restraints ...," *Landmark*, 973 F.2d at 290. The Complaint and Motion ask this Court to interfere impermissibly with the RTC's discretion and business judgment. Granting the relief sought by the plaintiffs in similar cases would delay the completion of the RTC's task immeasurably, and the RTC will lose any hope of prompt recovery on these assets.[10]

Thus, independent of the statutory prohibition, plaintiffs have not presented evidence supporting injunctive relief.

### CONCLUSION

In enacting 12 U.S.C. § 1821(j), Congress protected the RTC from judicial intervention affecting the exercise of its designated powers. This statutory mandate precludes the plaintiffs' attempt to enjoin the RTC's sale of its Note and Mortgage. A separate Order will be entered denying the plaintiffs' Emergency Motion for Preliminary Injunction and dismissing this adversary proceeding with prejudice.

---

**8.** The history of this bankruptcy case after the court announced its ruling on the plaintiffs' motion provides ex post facto proof of this point. Following the sale of the Debtor's Note and Mortgage, the Debtor negotiated a consensual plan of reorganization with the buyer. A confirmation hearing is set for January 24, 1994.

**9.** See e.g., 12 U.S.C. § 1821(c)(13)(C) (providing that the RTC may liquidate a failed thrift in an orderly manner and may dispose of any matter relating to the thrift as the RTC determines is in the best interest of the thrift, its depositors, and the RTC).

**10.** The RTC represents the public interest. *See In re Deltacorp*, 111 B.R. 419, 423 (Bankr. S.D.N.Y.1990) ("There is a significant public interest in adhering to Congress' clear intent that the ailing savings and loan industry be treated with swift and extraordinary attention."); *First Nationwide Bank v. Florida Software Services, Inc.*, 770 F.Supp. 1537, 1541 (M.D.Fla.1991) ("[T]here is almost no legitimate private expectation which outweighs the public interest in enforcing FIRREA").