**281–300 JOINT VENTURE, Plaintiff–Appellant,**

v.

**Robert F. ONION, Substitute Trustee, and San Antonio Savings Association, Defendants–Appellees.**

**No. 90–5628 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

June 12, 1991.

**36**

Joe K. Longley, Timothy R. Labadie, Longley & Maxwell, Austin, Tex., for plaintiff-appellant.

Wm. M. McNaught, Fred Riley Jones, San Antonio, Tex., Kirk K. Van Tine, Jesse R. Adams, III, Baker & Botts, Houston, Tex., for defendants-appellees.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The plaintiff, 281–300 Joint Venture (Joint Venture), appeals a decision of the district court denying its motion for a preliminary injunction prohibiting the foreclosure sale of its property and dismissing its action against San Antonio Savings Association (SASA) on prudential grounds pursuant to *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205 (5th Cir.1989), and its progeny, and further dismissing its action against Robert F. Onion, as substitute trustee, on mootness grounds. On appeal, Joint Venture maintains that the court (1) should not have dismissed the case on prudential grounds and (2) should have enjoined the Resolution Trust Corporation (RTC), as conservator of San Antonio Savings Association, F.A. (new SASA), from conducting the foreclosure sale. Finding no error, we affirm.

I.

On December 28, 1987, Joint Venture entered into a wrap-around loan from SASA, in the amount of $8,100,000, for the development of 296.69 acres of land in Bexar County, Texas. The loan was evidenced by a note, loan agreement, and deed of trust. At the time of the loan, the property was encumbered by two superior liens. Pursuant to the loan agreement, SASA agreed to make advances to or for the benefit of Joint Venture for principal and interest on the underlying notes and for a certain percentage of each interest payment due on the SASA note. The loan agreement further obligated Joint Venture to pay the remaining interest on the SASA note with funds other than the proceeds of the loan; it provided that, in the event of non-payment, SASA had the right to foreclose on the property.

Joint Venture claims that on January 2, 1989, SASA failed to make an annual timely payment on one of the underlying notes. Shortly thereafter, the holder of that note declared it in default and posted the property for foreclosure. At the time of this

event,[1] Joint Venture avers that it was current in its obligations and not in breach of the loan agreement. SASA, however, maintains that, beginning in January 1989, Joint Venture failed to make interest payments when due. SASA contends that as of November 30, 1989, Joint Venture had failed to make interest payments totaling approximately $160,000.

On February 28, 1989, the Federal Home Loan Bank Board (FHLBB) determined that SASA was insolvent and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as conservator, and later as receiver, of the thrift. In its role as receiver, the FSLIC took possession of all the assets of SASA and succeeded to all of its rights, titles, powers, and privileges. It was also directed to liquidate the claims against SASA.

As a result, according to federal regulations and state law, if the assets of the failed institution were insufficient to pay depositors in full, general unsecured creditors who were in a lower priority class were not entitled to be paid anything. *See* Tex.Rev.Civ.Stat.Ann. art. 852a, § 8.09(g)(2), (3), (4) (Vernon Supp.1991). Since the FHLBB determined that SASA did not have enough assets to satisfy the depositors in full, the claims of general unsecured creditors such as Joint Venture could not be satisfied.

Approximately four months later, the FHLBB created new SASA and appointed the FSLIC as conservator; the FSLIC was responsible for liquidating SASA's assets by transferring them to new SASA. In consideration for receiving such assets, new SASA agreed to assume SASA's liabilities for tax claims, its liabilities to depositors to the extent of their deposits, and its liabilities to secured creditors to the extent of the value of their security.

New SASA did not agree, however, to assume any liability for claims by SASA's general unsecured creditors. While the loan agreement, note, and deed of trust

executed by Joint Venture to SASA were transferred to new SASA, along with the right of collection or foreclosure, none of the liabilities for Joint Venture's claims against SASA was assumed by new SASA. Instead, the claims relating to SASA's conduct remained as claims against the FSLIC as receiver for SASA. After the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), abolished the FSLIC, the RTC succeeded the FSLIC as receiver for SASA and as conservator for new SASA.[2]

## II.

On June 30, 1989, Joint Venture filed suit in state district court, seeking a temporary restraining order (TRO) and a permanent injunction to prevent the FSLIC as conservator for SASA from foreclosing on the property that served as security for its loan. That day, Joint Venture secured a TRO restraining SASA and its substitute trustee, Onion, from conducting a foreclosure on the property.

Two weeks later, the case was removed to federal district court. Then, the property again was posted for foreclosure, this time by the RTC, acting as conservator for new SASA. The sale did not take place, however, as Joint Venture had filed a chapter 11 bankruptcy petition. On October 31, 1989, at the request of the RTC as conservator for new SASA, the bankruptcy court granted a motion to lift the stay, leaving no impediment to proceeding to a foreclosure sale.

In response, Joint Venture filed a motion for a preliminary injunction in district court on November 17, 1989. The court denied this motion and found that it was prohibited by section 212(j) of FIRREA, 12 U.S.C. § 1821(j), from taking any action to restrain or affect the powers or functions of the RTC as conservator of new SASA. A

---

1. The plaintiff claims that the breach of the loan agreement by SASA resulted in SASA's being elevated to a first lien position, caused injury to Joint Venture's credit reputation and standing

in the community, and shortened the term of one of the notes.

2. The RTC later was appointed as receiver for new SASA.

few days later, the RTC foreclosed on the lien.

On June 27, 1990, the RTC, as receiver for SASA, filed a motion to dismiss on prudential grounds, relying upon the FHLBB's determination of worthlessness. Joint Venture filed no response. The court then held that there would never be any assets with which to satisfy a judgment and granted RTC's motion. It also dismissed, as moot, the claims against Onion, as the property had been sold.

### III.

■ Joint Venture contends that, for two reasons, the court should not have dismissed this case on prudential grounds. First, it maintains that the RTC did not offer any evidence of the value of SASA's assets, thereby precluding a finding that it would be impossible for Joint Venture to collect on a favorable judgment for monetary damages. Second, even if Joint Venture would not have been able to collect any money, it argues that the court could have granted equitable relief and declared the rights of the parties. We disagree with both contentions.

The RTC presented sufficient evidence to demonstrate that SASA will never have any assets to satisfy a judgment against it by Joint Venture. The FHLBB determined that SASA's assets would be insufficient to satisfy its secured and deposit liabilities and that, after payment of the claims of secured creditors and depositors, "no amount remains for payment of general creditors ... and therefore, the Association's [SASA's] general creditors' claims ... are worthless...."[3] FHLBB Resolution No. 89–1769P, at 4 (July 12, 1989).

While the FHLBB's findings and conclusions regarding the worthlessness of unsecured creditor claims constitute final agency action, they are subject to review under the Administrative Procedure Act (APA).

See 5 U.S.C. §§ 702–706. Joint Venture, however, never sought judicial review of the FHLBB's determination of worthlessness. Instead, it argues that the determination alone is insufficient to prove that there will never be any assets in the receivership to satisfy the claims of unsecured creditors. Previously we have determined that such a collateral attack on the FHLBB's determination is improper and that, absent evidence to the contrary, we are bound by its decision. See *Gulley*, 902 F.2d at 351 n. 4.

The RTC also adequately demonstrates that a court, bound by the FHLBB's determination of worthlessness, would have no reason to grant equitable relief for Joint Venture or to declare the rights of the parties. Indeed, the RTC already has shown that Joint Venture, as an unsecured general creditor, has no right to any of SASA's or new SASA's assets and that the new thrift has not assumed any of the liabilities of its predecessor emanating from the loan agreement with Joint Venture. Since Joint Venture has not mentioned any other rights that it is entitled to receive in connection with this loan, the court had no reason to grant it equitable relief. See *FSLIC v. Hall Whispertree Assocs.*, 653 F.Supp. 148, 150 (N.D.Tex. 1986).

Thus, the court was correct in relying upon the FHLBB's decision, to the effect that there will never be any assets with which to satisfy a judgment by Joint Venture against SASA, in its determination to dismiss, on prudential grounds, Joint Venture's suit against this failed thrift. See *Triland*, 884 F.2d at 208 (where no means exist to collect on judgment, dismissal on prudential grounds is proper); *Adams v. RTC*, 927 F.2d 348, 354 (8th Cir.1991) (FHLBB's determination of worthlessness is sufficient to support dismissal on ground of prudential mootness); *accord Morgan v. Heights Sav. Ass'n*, 741 F.Supp. 620, 621

---

**3.** In addition, the RTC correctly argued that Joint Venture cannot look to new SASA as a source of recovery, as it did not assert any claim in its complaint against the RTC as conservator for this new thrift. Also, as we have noted, the potential liabilities to unsecured creditors of SASA were not assumed by new SASA. Thus, Joint Venture had no right to assert any claim against SASA's transferred assets. See *Gulley v. Sunbelt Sav., F.S.B.*, 902 F.2d 348, 351 (5th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991).

(E.D.Tex.1990); *FSLIC v. Locke*, 718 F.Supp. 573, 586 (W.D.Tex.1989).

## IV.

Joint Venture also argues that the court's refusal to enjoin the RTC, as conservator of new SASA, from conducting the foreclosure sale was improper. It maintains that section 212(j) of FIRREA should not be read to grant conservators broad powers to act quickly in dealing with the assets of failed thrifts, especially where such actions involve foreclosing on property of owners who have a substantial likelihood of prevailing on the merits of the case and who may suffer irreparable injury from the foreclosure. *See Libertarian Party v. Fainter*, 741 F.2d 728, 729 (5th Cir.1984). Joint Venture further asserts that the refusal to enjoin the foreclosure was unconstitutional. Both arguments are unpersuasive.

The court properly refused to enjoin the RTC from conducting the foreclosure. Section 212(j) states that "no court may take any action ... to restrain or affect the exercise of powers or functions of the Corporation [RTC] as a conservator or a receiver." Prior to the enactment of FIRREA, the Federal Deposit Insurance Act contained a similar provision that was created to enable the FSLIC to act in a quick and decisive manner in reorganizing, operating, or dissolving failed savings and loan institutions. *See North Miss. Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1101 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). Since this policy has not been changed with the enactment of FIRREA, the courts lack the ability to enjoin nonjudicial foreclosures that are within the statutory powers of the RTC as conservator or receiver. *Hall*, 653 F.Supp. at 150.

In this case, the foreclosure was within the statutorily authorized powers of the RTC as conservator. While Joint Venture argues that this foreclosure was not within the "powers or functions" of the RTC as conservator of new SASA that are protected from collateral attacks by section 212(j) and its predecessor, 12 U.S.C. § 1464(d)(6)(C), the RTC correctly cites to *Coit Indep. Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), to demonstrate that its actions were within this category.

In *Coit*, the Court stated that a court may not grant injunctive relief unless the power or function whose exercise is sought to be enjoined is beyond the powers granted to the RTC by statute. *Id.* at 574, 109 S.Ct. at 1369. The function under consideration here is the ability of the conservator to foreclose on the property of a debtor, a power that Congress gave to the RTC under FIRREA. Indeed, when the RTC acts as a conservator or receiver, it has broad authority to dispose of assets and to "collect all obligations and money due the [failed] institution." 12 U.S.C. § 1821(d)(2)(B)(ii).[4] Hence, the court may not enjoin the exercise of the RTC's powers in this instance, *see Shoreline Group, Ltd. v. Commonwealth Fed. Sav. & Loan Ass'n*, No. 90–6703–CIV (S.D.Fla. Feb. 14, 1991), regardless of Joint Venture's likelihood of success on the underlying claims.[5] *See Abbott Bldg. Corp. v. FSLIC*, 739 F.Supp. 532, 535 (D.Nev.1990).

Finally, Joint Venture's various claims that the court's denial of injunctive relief was unconstitutional are meritless. Accordingly, we AFFIRM.

---

4. *See also* 12 U.S.C. § 1821(d)(2)(B)(iv) (RTC empowered to "preserve and conserve the assets and property of such institution"); 12 U.S.C. § 1821(d)(2)(D)(i) (RTC authorized to "put ... institution in sound and solvent condition ...").

5. The anti-injunction provision of 12 U.S.C. § 1464(d)(6)(C) has been upheld on constitutional grounds. *See Haralson v. FHLBB*, 837 F.2d 1123, 1126 (D.C.Cir.1988); *Biscayne Fed. Sav. & Loan Ass'n v. FHLBB*, 720 F.2d 1499, 1503–04 (11th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984).