George R. BENDER, Plaintiff,

v.

CENTRUST MORTGAGE CORP., a California corporation, and Resolution Trust Corp., Conservator/Receiver for CenTrust Bank Professional Regulation, Defendants.

No. 91–2521–CIV.

United States District Court,
S.D. Florida.

July 6, 1992.

Timothy D. Naegel, Washington, DC, John E. Herndon, Jr., Hollywood, FL, for plaintiff.

Alan J. Kluger, Miami, FL, for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Plaintiff George Bender's Motion for Preliminary Injunction. Plaintiff is the former President of CenTrust Mortgage Co. ("CenTrust Mortgage"), which was a wholly owned subsidiary of CenTrust Bank, and he

seeks to recover on a variety of claims arising out of his alleged employment relationship with the CenTrust entities. By this motion Plaintiff seeks to enjoin the Defendant Resolution Trust Corporation (RTC) from dissipating the assets of CenTrust Mortgage, specifically CenTrust Mortgage's loan servicing portfolio. Because the Court lacks jurisdiction to enter the requested injunctive relief, and because in the companion order entered this date we dismissed Count XI of the complaint, which forms the basis for injunctive relief, Plaintiff's motion for preliminary injunction is DENIED.

Plaintiff alleges that on or about June 10, 1985, Bender entered into an employment contract in which he agreed to serve as the Chief Executive Officer of CenTrust Mortgage. *See* First Amended Complaint at ¶ 7. Pursuant to the employment contract, Bender was to be paid an annual salary, retirement benefits, an initial bonus, and annual incentive bonus, and a long-term incentive bonus. *See id.* Despite the fact that the contract names Bender and CenTrust Bank as the parties, and that only Bender and the Chief Executive Officer of CenTrust Bank signed the contract, Plaintiff maintains that it was the intent of signers that CenTrust Bank and its subsidiary CenTrust Mortgage be jointly and severally liable for compensation owed Bender. First Amended Complaint at ¶ 9. On February 2, 1990, the Director of the Office of Thrift Supervision took possession of CenTrust Bank and appointed the Resolution Trust Corporation ("RTC") as Conservator of the bank. The RTC repudiated Bender's contract on February 5, 1990.

Plaintiff has filed an eleven count complaint seeking a variety of relief. Significantly, Plaintiff attempts to distinguish CenTrust Bank from CenTrust Mortgage and seeks to impose liability upon CenTrust Mortgage. Count I is an action for breach of contract against CenTrust Mortgage. Count II is a second action for breach of contract against CenTrust Mortgage, based upon third party beneficiary theory. Count III is a breach of contract action against the RTC. Count IV is a claim for quantum meruit recovery against CenTrust Mortgage. Count V is a count in quantum meruit against the RTC. Count VI alleges a breach of contract against CenTrust Mortgage based on estoppel theory. Count VII is an action for breach of fiduciary duty against CenTrust Mortgage. Count VIII is an action for reformation of contract against RTC. Count IX is an action for improper repudiation of the employment contract against the RTC, alleging that RTC abused its discretion in repudiating the employment contract. Count X is a count for tortious interference raised against persons unknown, for improperly causing Bender's termination. Finally, Count XI seeks the imposition of a constructive trust against CenTrust Mortgage. In a companion order entered this date the Court granted Defendant RTC's motion to dismiss Count XI of the First Amended Complaint, and denied Defendants' motions to dismiss the other counts. *See* Order on Motions to Dismiss and for More Definite Statement.

"To enable the FDIC to move quickly and without undue interruption to preserve and consolidate the assets of the failed institution, Congress enacted a broad limit on the power of the courts to interfere with the FDIC's efforts." *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992).[1] Section 1821(j) of Title 12 provides as follows:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j) (West 1989). It is clear that the RTC has broad statutory authority as receiver to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution...." 12 U.S.C. § 1821(d)(2)(E) (West 1989). *See Telematics Int'l*, 967 F.2d at 705 (discussing statutory powers of the FDIC); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397–98 (3d

---

1. 12 U.S.C. § 1441a(b)(4) provides that sections 1821–1823 apply to the RTC as well as the FDIC. *See* 12 U.S.C.A. § 1441a(b)(4) (West Supp.1992); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 n. 10 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (discussing the wide range of powers or functions of the Corporation as a conservator or receiver). As the district court wrote in *Gosnell v. Federal Deposit Ins. Corp.:*

> From a reading of [various statutory provisions], along with § 1821(j) it is evident that FIRREA empowers FDIC to sell a failed institution's assets, whatever they may be, free from interference by the Courts.

> From the language of § 1821(d)(2)(I), it is evident that Congress intended to vest FDIC with broad discretion in its conduct as receiver. The court is aware of no limitation or prescription concerning the manner in which the FDIC disposes of acquired assets; rather the sections quoted above, when examined along with § 1821(j), provide the FDIC with the authority to dispose of assets free from judicial interference.

> Lest any doubt remain, examination of FIRREA's legislative history compels the same conclusion. Congress wrote that the authorities granted to the FDIC were "designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." H.R.Rep. No. 101–54(I), 101st Congress, 1st Sess., 330, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 126....

No. 90–1266L, 1991 WL 533637, at *5, 1991 U.S.Dist.Lexis 18054, at *13–14 (W.D.N.Y. Feb. 4, 1991). Clearly, the assets of CenTrust Mortgage, the wholly owned subsidiary of CenTrust Bank, are assets of CenTrust Bank, and Plaintiff does not dispute the power of the RTC to liquidate CenTrust Mortgage. *See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction Without Bond; Plaintiff's Opposition to Resolution Trust Corporation's Motion to Dismiss [etc.] at 17–19; Supplemental Brief in Opposition to Resolution Trust Corporation's Reply Brief [etc.] [hereinafter "Plaintiff's Supplemental Reply to RTC"] at 2–9. Rather, Plaintiff argues that on the merits he will succeed, and that liquidation of CenTrust Mortgage, absent imposition of a constructive trust restricting the disposition of assets, will impede Plaintiff's ability to recover if he prevails.

■ Plaintiff contends that the RTC's repudiation of Bender's contract was beyond the scope of the RTC's authority. *See* Plaintiff's Supplemental Reply to RTC at 2–4. Plaintiff cites two cases for the well-established principle that courts may interfere with RTC activities where the RTC's actions fall outside the scope of its statutory authority. *See* Plaintiff's Supplemental Reply to RTC at 2–3. The first, *Coit Independence Joint Venture v. FSLIC,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), decided before the enactment of FIRREA and based upon a provision similar to § 1821(j)[2] contained in the Federal Deposit Insurance Act, held that the provision "simply prohibits courts from restraining or affecting FSLIC's exercise of those receivership 'powers and functions' that have been granted by statutory sources." *Coit,* 489 U.S. at 574, 109 S.Ct. at 1369. In *Coit* the Supreme Court considered whether Congress granted the FSLIC, as receiver, the exclusive authority to adjudicate state law claims asserted against a failed savings and loan. *Id.* The Court held that Congress had not done so, and that creditors of the failed institution were entitled to *de novo* examination of their claims in Court. The Court found that such adjudication would not "restrain or affect" the exercise of FSLIC's receivership function, and held that statutory language only prevents interference with those FSLIC powers or functions that are granted elsewhere in the statute. *See Central W. Rental Co. v. Horizon Leasing,* 740 F.Supp. 1109, 1111–14 (E.D.Pa. 1990); *Gosnell,* 1991 WL 533637, at *3–6, 1991 U.S.Dist.Lexis 18054, at *6–9.

The second case relied upon by Plaintiff is *281–300 Joint Venture v. Onion,* 938 F.2d 35 (5th Cir.1991), which interpreted and applied

---

**2.** *Coit* interpreted what was then section 1464(d)(6)(C), which stated that "[e]xcept as otherwise provided in this subsection, no court may take any ... action for or toward the removal of any ... receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a receiver." *Coit,* 489 U.S. 561, 109 S.Ct. 1361. This provision, slightly modified, is now codified at 12 U.S.C.A. § 1464(d)(2)(G) (West Supp.1992)

*Coit.* Pursuant to a loan agreement, San Antonio Savings Association (SASA) had agreed to advance money for the benefit of the plaintiff Joint Venture for the development of a certain piece of real property, and Joint Venture, in turn, was obligated to make various payments to SASA. · The loan agreement further provided that in the event Joint Venture failed to make the required payments, SASA could foreclose on the land. Subsequently, the Federal Home Loan Bank Board (FHLBB) determined SASA was insolvent and appointed the FSLIC as conservator and later receiver of the thrift. Later, the FHLBB created new SASA and appointed FSLIC conservator, responsible for liquidating SASA's assets by transferring them to new SASA. Subsequently, with the passage of FIRREA the FSLIC was abolished and the RTC succeeded the FSLIC as conservator. *281–300 Joint Venture,* 938 F.2d at 37.

Plaintiff is correct in citing *281–300 Joint Venture* for the general proposition that a court is not disabled by § 1821(j) when the interference sought from the court prevents the RTC from exceeding its power. However, the analysis presented by the Fifth Circuit shows that the RTC may not be impeded in the lawful exercise of its powers, even if in the underlying suit on the merits the RTC is in error. The Fifth Circuit wrote as follows:

> In *Coit* the Court stated that a court may not grant injunctive relief unless the power or function whose exercise is sought to be enjoined is beyond the powers granted to the RTC by statute. [*Coit,* 489 U.S.] at 574 [109 S.Ct. at 1369]. The function under consideration here is the ability of the conservator to foreclose on the property of a debtor, a power that Congress gave to the RTC under FIRREA. Indeed, when the RTC acts as a conservator or receiver, it has broad authority to dispose of assets and to "collect all obligations and money due the [failed] institution." 12 U.S.C. § 1821(d)(2)(B)(ii). Hence, the court may not enjoin the exercise of the RTC's powers in this instance, *see Shoreline Group, Ltd. v. Commonwealth Fed. Sav. & Loan Ass'n,* No. 90–6703–CIV [1991 WL 496658] (S.D.Fla. Feb. 14, 1991), regardless of Joint Venture's likelihood of success on the underlying claims.

*281–300 Joint Venture,* 938 F.2d at 39. *See also Gross v. Resolution Trust Corp.,* No. 92–0286, 1992 WL 55741, *2–3, 1992 U.S.Dist.LEXIS 3041, at *6–10 (E.D.Pa. Mar. 13, 1992) (analysis determines whether RTC action to be interfered with is authorized by statute).

■ In the instant case Plaintiff seeks to prevent the liquidation of CenTrust Mortgage, and to cordon off a pool of assets for himself. Plaintiff has not disputed that the RTC is empowered to liquidate CenTrust Mortgage and disburse the proceeds; rather, Plaintiff has argued that on the underlying merits, the RTC's repudiation of the contract was invalid, and that a liquidation and dissipation of CenTrust Mortgage should be enjoined to preserve his remedy. Applying the analysis in *281–300 Joint Venture,* we believe it is clear that when a plaintiff seeks to interfere with a RTC activity, and thereby avoid the bar imposed by § 1821(j), it is the RTC action with which Plaintiff seeks to interfere that must exceed the powers of the RTC. As there is no dispute that the RTC has the authority to liquidate CenTrust Mortgage, just as it was clear in *281–300 Joint Venture* that the RTC possessed the authority to foreclose upon the land in question, the ultimate merits of Plaintiff's complaint against the RTC are irrelevant. Thus, even if the court had the power to enjoin the RTC from repudiating Bender's contract, on the grounds that the act was somehow *ultra vires,* we do not have the power to enjoin a lawful liquidation, or otherwise interfere with the proper disposition of CenTrust Mortgage assets.

■ In the instant case, moreover, it is clear that the RTC did not exceed its authority in the underlying dispute. Plaintiff argues that because section 1821(e)(1) provides that the receiver for any "insured depositary institution may disaffirm or repudiate any contract or lease … to which such institution is a party," 12 U.S.C.A. § 1821(e)(1) (West 1989), and because the definition of "insured depositary institution" contained in 12 U.S.C. § 1813(c)(2) does not include noninsured subsidiaries such as CenTrust Mort-

gage, the RTC lacked the power to repudiate the contract.[3]

It is clear, however, that the insured depository institution, CenTrust Bank, was a party to the employment contract, and the contract therefore falls within the express language of § 1821(e)(1). The contract's preamble specifies that it is an "EMPLOYMENT AGREEMENT made June 10, 1985 between CENTRUST SAVINGS BANK ... and George R. Bender." David L. Paul signed the contract in his capacity as Chairman of the Board and Chief Executive Officer of CenTrust Savings Bank. And, finally, the contract imposes various duties upon CenTrust Bank. See Executive Employment Agreement, First Amended Complaint, Exhibit. Indeed, in support of his claim that CenTrust Mortgage is also bound by the employment agreement, in the general factual allegations section of the complaint Plaintiff alleges that it was the parties' intent that the Bank be bound by the employment agreement, albeit jointly and severally with the CenTrust Mortgage. See First Amended Complaint at ¶ 9.

■ Moreover, even if CenTrust Bank were not a party to the employment agreement—and it clearly is—we would be hard pressed to find that the RTC cannot repudiate a contract entered into by a wholly-owned subsidiary of a failed insured depository institution. We observe that the provisions of 12 U.S.C. § 1823(e) also apply to "insured depository institutions," and that the Eleventh Circuit concluded in Victor Hotel Corp. v. FCA Mortgage Corp., 928 F.2d 1077 (10th Cir.1991) that section 1823(e) applies to wholly owned subsidiaries. In that case the Court held that to exclude subsidiaries from the protections offered the FDIC by

D'Oench Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), its progeny, and 12 U.S.C. § 1823(e)[4] would seriously undermine the policy underlying the D'Oench doctrine, namely allowing the FSLIC to evaluate quickly a financial institution's condition from a review of its files. Victor Hotel, 928 F.2d at 1081–83. Similarly, prohibiting the RTC from repudiating an onerous contract entered into by a wholly owned subsidiary would defeat the RTC's ability to avoid burdensome obligations and its duty to maximize the assets of the institution.

Finally, we note that in addition to arguing that the RTC did not have the power to terminate Bender's contract because he was employed by a subsidiary, Plaintiff has also argued and alleged that the repudiation constituted an abuse of discretion. See First Amended Complaint at ¶ 41. The RTC has conceded that an action alleging improper repudiation may be brought in this Court. Even if it is shown that such repudiation was improper, however, we do not believe that an improvident decision is the type of abuse of power that the Supreme Court had in mind in Coit.[5]

We observe, in addition, that in Rosa v. Resolution Trust Corp. the Third Circuit ruled that despite the allegation that the RTC's termination of an ERISA plan was illegal, and was therefore beyond the powers of the RTC, the Court found "no such limitation in the language of § 1821(j).... [to do so] would undermine the purpose of the statute, namely to permit the RTC as conservator or receiver to function without judicial interference...." 938 F.2d 383, 397 (3d Cir. 1991), cert. denied, —— U.S. ——, 112 S.Ct.

---

3. Section 1813(c)(2) states as follows: "The term 'insured depository institution' means any bank or savings association the deposits of which are insured by the Corporation pursuant to this chapter." 12 U.S.C.A. § 1813(c)(2) (West 1989).

4. For a discussion of D'Oench and the related statutory provisions, see Order on Motions to Dismiss and for More Definite Statement at 5–12.

5. We observe that the Ninth Circuit, in ruling that the court has jurisdiction to decide whether the FSLIC conformed to state foreclosure law,

made clear that "we do not mean to establish the overly simple proposition that every time a party claims that a receiver has done an act in an improper manner adjudication can have no effect upon the exercise of powers of the receiver. That would be an overly broad exception, which would enable any clever pleader to swallow up the statute at will." Abbott Building Corp. v. United States, 951 F.2d 191, 195 (9th Cir.1991) (decided under 12 U.S.C. § 1464(d)(6)(C), the section that is parallel to section 1821(j) and was at issue in Coit).

582, 116 L.Ed.2d 608 (1991).[6]  We believe it is clear from the relevant law, the First Amended Complaint, and the pleadings relevant to this motion, that the RTC did not exceed its authority—though, of course, the Court expresses no opinion as to whether the RTC abused its discretion.  Accordingly, we hold that 12 U.S.C. § 1821(j) renders the Court without the power to grant the injunctive relief requested to prevent the dissolution and dissipation of CenTrust Mortgage. Accordingly, because of the mandate from Congress that the courts not meddle in lawful RTC actions, Plaintiff's motion for preliminary injunction must be denied.

Plaintiff's pleadings and attachments fail to satisfy the test for a preliminary injunction. The standard for granting a preliminary injunction is familiar and well settled.   The Court of Appeals for the Eleventh Circuit has written:

> In order to grant a preliminary injunction, a district court must find the following: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Guaranty Financial Services, Inc. v. Ryan,* 928 F.2d 994, 997–98 (11th Cir.1991) (citing *United States v. Lambert,* 695 F.2d 536, 539 (11th Cir.1983) (quoting *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974))). First, as we have dismissed the Count in Plaintiff's complaint seeking to impose a constructive trust, *see* Order on Motions to Dismiss and for More Definite Statement at 23–31, Plaintiff cannot succeed on the merits on the portion of his action that provides the basis for his application for injunctive relief. In addition, fully crediting the contents of Plaintiff's motion and the affidavits Plaintiff relies upon, we could not say that granting

the preliminary injunction would serve the public interest.  Given the mandate given the RTC to protect the public by salvaging the banking system, we can hardly see how preventing the RTC from consummating a transaction to sell bank assets would serve the public interest.

Accordingly, Plaintiff's motion for preliminary injunction must be and is DENIED.

DONE AND ORDERED.

---

6.  The RTC has argued in addition that sections 1821(e)(3)(A)–(B), which limit the liability of the RTC to actual compensatory damages, bar the imposition of a constructive trust.   Though it may be true that this section would limit the size

of such trust to compensatory damages, the statutory language clearly limits the amount of liability, and is silent as to whether the amount of liability should be segregated or held in trust.