Jay M. GROSS, as Trustee for Bell Savings Holdings, Inc. Money Purchase Pension Plan and Bell Savings Holdings, Inc. Profit Sharing Plan

v.

BELL SAVINGS BANK PA SA, in Receivership, Resolution Trust Corporation as Receiver; Bell Federal Savings Bank, in Conservatorship, Resolution Trust Corporation as Conservator Resolution Trust Corporation as Receiver for Bell Savings Bank PaSA ("RTC–Receiver") and Resolution Trust Corporation as Conservator for Bell Federal Bank ("RTC–Conservator"). Appellants in No. 92–1196

RESOLUTION TRUST CORPORATION, as Receiver for Bell Savings Bank PaSA; and Resolution Trust Corporation, as Conservator for Bell Federal Savings Bank, Petitioners in No. 92–1197

v.

The Honorable Lowell A. REED, Jr., United States District Court Judge in the Eastern District of Pennsylvania; and Jay Gross, as Trustee for Bell Savings Holdings, Inc. Money Purchase Pension Plan and Bell Savings Holdings, Inc. Profit Sharing Plan.

Nos. 92–1196, 92–1197.

United States Court of Appeals, Third Circuit.

Argued June 12, 1992.

Decided Sept. 9, 1992.

As Amended Oct. 5, 1992.

Alan S. Fellheimer (argued), Judith E. Fellheimer, Maia Caplan, Fellheimer & Eichen, P.C., Philadelphia, Pa., for appellee/respondents.

Michael R. Lastowski, Mark C. Levy, Patricia A. McElroy, Saul, Ewing, Remick & Saul, Philadelphia, Pa., Kirk K. Van Tine (argued), Timothy S. Durst, Baker & Botts, Richard T. Aboussie, Vice President and Associate Gen. Counsel, P. Matthew Sutko, Resolution Trust Corp., Washington, D.C., Stephen G. Burns, Section Chief (Litigation), Frank A. Mayer, III, Resolution Trust Corp., Valley Forge, Pa., for appellants/petitioners.

Before: MANSMANN, SCIRICA and ROTH, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge:

In this expedited appeal we are faced with the crucial issue of a federal court's power to enjoin aspects of the Resolution Trust Corporation's (RTC) administration of the savings and loan crisis. Appellees Jay and Nathaniel Gross[1] sought an injunction requiring the appellant RTC to release nearly $500,000 of pension and profit-sharing assets in its control. The district court granted the requested relief. Because we find on these facts that an injunction would interfere with the powers granted the RTC under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), we will reverse.

### I.

From 1971 to 1991, Jay and Nathaniel Gross served as high-ranking officers of Bell Savings Bank PaSA (Bell Savings), a now-defunct savings institution in Pennsylvania. As employees of the bank, the Grosses held substantial deposits with Bell Savings, totalling nearly $500,000, in the form of pension and profit sharing funds.

On March 15, 1991, the Director of the Office of Thrift Supervision (OTS) determined, pursuant to § 5(d)(2) of the Home Owners' Loan Act, 12 U.S.C.A. § 1464(d)(2) (Supp.1992), and § 11(c)(6) of the Federal Deposit Insurance Act, 12 U.S.C.A. § 1821(c)(6) (1989), that Bell Savings had been managed under "unsafe and unsound practices," which were likely to lead to losses that would "deplete all or substantially all of its capital." See 12 U.S.C.A. § 1821(c)(5)(A) & (B) (1989 & Supp.1992). On that date, OTS took control of Bell Savings, removed the Grosses from office, and appointed the RTC as the bank's conservator. As conservator, the RTC was charged with managing the ongoing affairs of the bank. Within days, Bell Savings' parent company, Bell Holdings, Inc., agreed with the RTC to discontinue the bank's pension and profit sharing plans, for which Nathaniel Gross was trustee. App.P, Grosses' Verified Complaint, ¶ 8. The affected funds, which included the appellees' $500,000, were to be distributed once the decision to terminate the plans was approved by the IRS.

Four days into Bell Savings' conservatorship, the OTS decided that the bank could no longer be maintained as an ongoing concern. OTS placed the bank into receivership, and as receiver the RTC was charged with winding up the institution's affairs. Simultaneously, the OTS appointed RTC as conservator of the newly-chartered Bell Federal Savings Bank (Bell Federal). Bell Savings and Bell Federal entered into a Purchase and Assumption Agreement (the Purchase Agreement) which transferred certain assets and liabilities of the old bank to the new bank. The

---

[1]. Nathaniel Gross died in February of this year, and his estate has been substituted as a party.

transferred obligations included, *inter alia*, demand deposits, App. O, Purch. Agreement § 2.1(a), and vested liabilities under Bell Savings' pension and profit sharing plans, App. O, Purch. Agreement § 2.1(g). Under § 9.3 of the Agreement, however, Bell Savings retained the right to order Bell Federal to withhold certain deposits from distribution that are necessary to offset depositor liabilities to the bank. App. O, Purch. Agreement § 9.3.[2]

In April 1991, after they were notified of the RTC's intention to terminate Bell Savings' pension and profit-sharing plans, the Grosses attempted to withdraw their deposits in those plans from the bank. *See* App. Q (letter from Jay Gross to Bell Savings). The Grosses made further withdrawal attempts in September and November 1991, and in early January 1992. *See* App. P, Verified Complaint ¶¶ 11–12, 24. Relying on the withholding provision in § 9.3 of the Purchase Agreement, the RTC refused to distribute the funds, allegedly because the Grosses were under investigation for their role in the bank's failure.[3]

On January 15, 1992, the Grosses filed a complaint in the Eastern District of Pennsylvania, on behalf of all participants in the pension and profit sharing plans, seeking a temporary restraining order directing "the Resolution Trust Company as receiver and/or conservator of Bell Savings Bank" to release the deposits. On the same day, the Grosses filed a motion for a preliminary injunction seeking the same relief.[4] The proceeding was subsequently narrowed to the amounts held in the Grosses' accounts, as the RTC informed the court that it would not object to the withdrawal and transfer of any other plan participant's account balance.[5]

The Grosses alleged that by withholding the funds the RTC had breached its fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.A. §§ 1001 *et seq.* (ERISA), and violated the due process clause of the Fifth Amendment. Without immediate relief, the complaint continued, Bell Federal might be placed in receivership and all uninsured deposits with the bank might be lost.[6] The RTC argued that it had the right to withhold the Grosses' account balances under both FIRREA and the Purchase Agreement because of the Grosses' liabilities to the bank. In support of its

**2.** The withholding provision of § 9.3 permitted RTC as receiver for Bell Savings to determine, in its discretion, "that all or any portion of any deposit balance assumed by and transferred to the Assuming Association ... does not constitute a 'Deposit' ... and may direct the Assuming Association to withhold payment of all or any portion of any such deposit balance." App. O, Purch. Agreement § 9.3.

Beneficiaries of pension plans are considered to be "depositors" along with regular checking/savings account patrons. *See* 12 CFR §§ 330.12(a) & (b).

**3.** The RTC alleges, pursuant to its preliminary investigation into the bank's failure, that the Grosses are liable to the bank for damages in excess of $1,000,000. *See* App. U, Affidavit of Jo Ann Campbell (RTC Investigator) dated Feb. 24, 1992.

**4.** We note some inconsistency between the language of the complaint and the motion for a preliminary injunction. As noted, the request for a temporary restraining order was directed against Bell Savings, the old bank. The brief in support of the motion for a preliminary injunction states, however, that the contested deposits were maintained at Bell Federal, not Bell Savings, and that the party to be enjoined is the RTC in its relation to Bell Federal, the new bank. App. R, Memorandum in Support of Plaintiff's Motion for Preliminary Injunction at 1, 11. Because we find that neither the RTC as conservator nor as receiver may be enjoined on the facts of this case, we need not decide which entity maintained control of the funds.

**5.** There is no evidence in the record before this court as to whether any other plan participant has been paid.

**6.** The federal government does not insure deposits in excess of $100,000, 12 U.S.C.A. § 1821(a)(1) (1989). While a bank is in conservatorship it operates as a normal business, and a depositor may withdraw the full amount of his deposit if there is no offsetting liability to the bank. Once a bank goes into receivership, however, normal business operations cease, and assets, once collected, are distributed to claimants only in proportion to the institution's liquidation value. Almost by definition, once the institution is in liquidation it is unlikely that any uninsured depositor would receive the full value of his investment.

We are aware that Bell Federal was taken into receivership soon after the injunction in this case issued.

position in opposition to the preliminary injunction, the RTC submitted an affidavit of its investigator detailing the alleged fraud the bank suffered at the Grosses' hands.

On February 28, 1992, the district court denied the Grosses' request for a temporary restraining order. Though the court found that it had the power to issue an order requiring the RTC to release the funds, the court concluded that the Grosses had not successfully demonstrated a reasonable likelihood of success on the merits of either claim asserted. App. C, 2/28/92 Order at 6. Both parties filed motions for reconsideration. The RTC claimed error in the court's statutory analysis, arguing that FIRREA's anti-injunction provision prevented the court from considering the relief granted. The Grosses alleged that the court overlooked an additional cause of action not formally captioned in their brief: a depositor's common law right to withdraw deposits upon demand. *See* App. L, Memorandum in Support of Order at 9.

On March 12, 1992, after reconsidering the claims raised by the parties, the district court granted the Grosses' request for a preliminary injunction. Despite the RTC's objection, the court again found on reconsideration that it had the ability to issue an injunction but reversed its decision on the merits and held that the Grosses had shown a likelihood of success on their common law depositor claim. App. L. The RTC was directed to place the Grosses' funds in escrow with the court.

The RTC appealed the preliminary injunction order, filed motions to suspend the injunction pending appeal and to expedite briefing, and filed a petition for a writ of mandamus requiring the district court to vacate his orders regarding the injunction. On March 24, 1992, a panel of this court granted the RTC's motion for expedited briefing and denied its motion to suspend the injunction.

## II.

This case presents the question of whether a federal court may order the RTC to release certain pension and profit-sharing funds of a failed savings institution. The district court enjoined the RTC, as both Receiver of Bell Savings and Conservator of Bell Federal, from withholding the disputed funds.

We review the district court's issuance of the preliminary injunction for an abuse of discretion. As part of this inquiry, we review *de novo* issues of law, such as the court's ability to enter such a remedy. *See Rosa v. RTC,* 938 F.2d 383, 388 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

Initially, we must determine whether a federal court has the power to enjoin the RTC's behavior. We conclude that it does not, for the following reasons. Under FIRREA, Congress gave the RTC the "power to take all actions necessary to resolve the problems posed by a financial institution in default." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 415 (1989), *reprinted in* 1989 U.S.Code Cong.Admin.News 86, 211. To this end, courts are generally not permitted to enjoin any actions the RTC takes in its role as receiver or conservator. FIRREA's § 1821(j) states:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver.

12 U.S.C.A. § 1821(j) (1989).[7]

The RTC derives its powers directly from FIRREA, *see generally* 12 U.S.C.A. § 1441a(b)(2) (Supp.1992) and 12 U.S.C.A. § 1821(d) (1989), and indirectly from the failed institutions over which it has con-

---

7. Because of the confusion as to the entity enjoined, either or both RTC as conservator and RTC as receiver and as to whether it is the conservator or the receiver which actually holds the Grosses' pension and profit sharing assets, we deem it appropriate to analyze this case under § 1821(j), rather than under the jurisdictional aspects of § 1821(d)(13)(D) as it might apply if the assets were held by RTC as receiver. *See Rosa,* 938 F.2d at 393–94.

trol.[8] *See* 12 U.S.C.A. § 1821(d)(2)(A) (1989) (RTC inherits all "rights, titles, powers and privileges of the insured depository institution"). As a conservator or receiver, the RTC has the ability to

(i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii) collect all obligations and money due the institution;

．　．　　．　　．　　．

(iv) preserve and conserve the assets and property of such institution.

12 U.S.C.A. § 1821(d)(2)(B) (1989). As conservator, the RTC has the power to conduct the day-to-day business of the institution, including taking deposits; and the power to take necessary action to put the bank "in a sound and solvent condition." 12 U.S.C.A. § 1821(d)(2)(D) (1989). *See* H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 330 (1989), *reprinted in* 1989 U.S.Code Cong.Admin.News 86, 126. Once it becomes apparent that operating the bank is no longer practicable, the bank may be placed in receivership and its affairs concluded. As receiver, therefore, the RTC has additional powers, including the ability to place the bank in liquidation and to take steps to realize on the bank's assets. 12 U.S.C.A. § 1821(d)(2)(E) (1989). In this role, the RTC may withhold insured deposits necessary to cover a depositor's liability to the bank, "pending the determination and payment of such liability." 12 U.S.C.A. § 1822(d) (1989).

In this case, the Grosses seek an injunction requiring the release of funds under the RTC's control. The RTC argues that it has the right to retain the Grosses' funds under its authority as receiver to withhold deposits pending determination of a liability to the bank, or alternatively, that as conservator it may act in its discretion to preserve and conserve the assets of the bank, including those potentially tainted by fraud.

The district court found that the RTC acted outside its powers by withholding more than the insured amount, $100,000, authorized under § 1822(d). *See* 12 U.S.C.A. § 1822(d). ("The Corporation may withhold payment of such portion of the *insured* deposit of any depositor" to cover payment of a liability owed the bank (emphasis added)). Thus, the court held, because the RTC was acting outside its powers, an injunction could not interfere with those powers in violation of § 1821(j) and such a remedy was therefore appropriate. We disagree with this interpretation of the RTC's powers under § 1821(j).

■ This court has held that the RTC's powers are broad. *Rosa,* 938 F.2d at 398. Of course, the RTC's power is not limitless. That is, federal courts have the ability to restrain the RTC where the Corporation is acting clearly outside its statutory powers. *See Coit Indep. Joint Venture v. FSLIC,* 489 U.S. 561, 572–73, 109 S.Ct. 1361, 1368, 103 L.Ed.2d 602 (1989) (under FIRREA's precursor, FSLIC not given power to adjudicate state law claims; dismissal of federal court action reversed). Further injunctive relief is appropriate where that remedy is imposed by statute, automatically and by operation of law, without any action by a court. *See, e.g., In re Lane,* 136 B.R. 319, 320–21 (D.Mass.1992) (RTC has no power to foreclose on an asset when a bankruptcy stay is in effect; TRO issued); *In re Colonial Realty Co.,* Civ. Action No. 3:91–200X(JAC), 1991 WL 433816, *4, 1991 U.S.Dist. LEXIS 19014, *5 (D.Conn. Dec. 30, 1991) (automatic stay under the Bankruptcy Code overrides FIRREA's anti-injunction provision).

■ Nonetheless, where the RTC performs functions assigned it under the statute, injunctive relief will be denied even where the RTC acts in violation of other statutory schemes, *see Rosa,* 938 F.2d at 397 (ERISA violation does not pre-empt legitimate powers under FIRREA); *Arkansas State Bank Comm'r v. RTC,* 911 F.2d 161, 174 (8th Cir.1990) (McFadden Act does

---

**8.** The powers attributed to the FDIC in 12 U.S.C.A. §§ 1821, 1822 and 1823 are made applicable to the RTC by 12 U.S.C.A. § 1441a(b)(4) (Supp.1992).

not impinge on RTC's independent authority to promulgate rules regarding branch banks; injunction order reversed); or exercises judgment under one of its enumerated powers. *See 281–300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir.1991) (power to foreclose is legitimate, regardless of plaintiff's eventual success on merits of underlying claims; injunction denied), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992). In *Rosa,* we rejected the plaintiffs' argument that because the RTC was authorized to run the affairs of a troubled institution, it was only authorized to run them in a legal manner. *Rosa,* 938 F.2d at 397. We find here that the availability of injunctive relief does not hinge on our view of the proper exercise of otherwise-legitimate powers. Rather, as is implicit from the broad language of § 1821(j), Congress has crafted a damages remedy for those who allege harm from the RTC.

Several courts have reached a similar conclusion, though many decisions interpreting FIRREA remain unpublished. *Cf. RTC v. Clarke,* Civ. Action No. 90–7758, transcript at 12 (E.D.Pa. April 16, 1992) ("the issue treated as one of power does not depend on the reasonableness or the legitimacy of what it is that RTC proposes to do or not to do"); *Costa v. RTC,* 789 F.Supp. 43, 45 (D.Mass.1991) (power to sell assets legitimate, even if RTC acted fraudulently; injunctive relief not available); *Jenkins–Petre Partnership One v. RTC,* Civ. Action No. 91–A–637, 1991 WL 160317, *9, 1991 U.S.Dist. LEXIS 20240, *9 (D.Colo. Aug. 13, 1991) (denying injunction where it would impinge on RTC's powers to preserve and conserve institution's assets). *See also RTC v. CedarMinn Bldg. Ltd. Partnership,* 956 F.2d 1446, 1451 (8th Cir. 1992) (finding "permissible" the RTC's interpretation of its powers under FIRREA).

■ Here, the RTC was acting within its legitimate authority in withholding the Grosses' deposits, whether we characterize the RTC's action as withholding deposits pending determination of a liability to the

bank or as taking measures to preserve and conserve the assets of the institution. The RTC may withhold funds under its powers as a receiver, and, given the allegations of fraud in this case, we find that actions taken in connection with the resolution of this wrongdoing can be read as putting the bank in "sound and solvent condition" under the RTC's power as a conservator. Injunctive relief would "restrain or affect" those powers under § 1821(j), and is therefore inappropriate.

The fact that the Corporation withheld more than the insured amount of the deposits does not affect our analysis under § 1821(j), though it may well provide the Grosses with valid grounds for a claim for damages, an issue we need not and do not reach. Moreover, the courts are available to supply a remedy if the RTC's allegations of fraud against the Grosses prove to be unfounded. Unlike an injunction request, federal courts do have a role adjudicating the legitimacy of a claim for damages against an insolvent institution, after the injured party exhausts the appropriate administrative proceedings. *See Coit,* 489 U.S. at 572, 109 S.Ct. at 1368. Again, however, this does not affect the limitations on injunctive relief contained in § 1821(j).

### III.

We find, under § 1821(j), that the district court does not have the ability to enjoin activity by the RTC where the Corporation is colorably acting within its enumerated powers. The order granting the Grosses' requested injunction will be reversed, and we will remand to the district court with instructions that the injunction be dissolved.[9]

---

9. Because we will reverse the district court's injunction order, the RTC's petition for a writ of mandamus requiring the dissolution of the in-

junction is moot and will be dismissed. The RTC has also filed a motion to substitute itself as receiver for Bell Federal in place of its con-

servatorship for Bell Federal. Because we feel that such a substitution would introduce additional legal implications into this case at a time when we do not reach the merits of the underlying claims, we will deny the motion without prejudice.